STELLA W. WINTER *vs.* LEWIS L. HARRIS.

PROVIDENCE—MAY 28, 1901.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Law of the Road. Highways. Traveled Part of Highway.*

Gen. Laws cap. 74, § 1, provides that "every person traveling with any carriage who shall meet any other person so traveling on any highway shall drive his carriage to the right of the centre of the traveled part of the road, so as to enable such person to pass." A curbed street forty feet wide was paved with cobble-stones for twenty-four feet, and the remainder was macadamized. The paved portion was traversed by double tracks for electric cars. The whole width of the street was in order for travel, though not so much used as the macadamized portion :—

*Held,* that the "traveled part" of the street was the whole width from curb to curb, and not that portion which was mostly used for travel.

*Held,* further, that a plaintiff who, at the time of the accident in question, was on the left of the centre of the traveled part, as thus defined, and who showed no sufficient excuse for being there, and whose injuries were attributable to this cause, was guilty of such negligence as would bar recovery in an action brought by her to recover for injuries received in a collision with defendant's carriage.

TRESPASS ON THE CASE for negligence. The facts are fully

stated in the opinion. Heard on petition of plaintiff for a new trial, and new trial denied.

ROGERS, J. This is an action of trespass on the case for the alleged negligence of the defendant through his servant's so unskillfully and carelessly driving and managing his carriage on a public highway in the outskirts of the city of Providence as to cause it to collide with the plaintiff's buggy, whereby said buggy was damaged and the plaintiff herself was thrown out and injured, while claiming to be in the exercise of due care.

It appeared from the evidence that the accident occurred on Broad street in Cranston, just over the city line, on March 9, 1898, between 6:30 and 7 o'clock P. M., when the plaintiff, accompanied by Mrs. Helen R. Herrick, was driving a horse and Goddard buggy down Broad street, away from the city, and the defendant's horse and carriage, also a Goddard buggy, was being driven toward the city by his coachman, Edward Ford, who was the sole occupant thereof; that Broad street, at the place of the accident, is a curbed street forty feet wide from curb to curb, running northerly toward Providence and southerly toward Edgewood in Cranston; that the westerly portion of the driveway for twenty-four feet eight inches, is paved with cobble-stones, while the remainder of the width of the driveway, fifteen feet four inches, is macadamized; that the paved surface of Broad street is traversed by double tracks for electric cars, the space between the separate rails of each track being four feet ten inches, and the space between the separate tracks (*i. e.*, between the west side of the east track and the east side of the west track) being four feet two inches; that all the space, being nine feet four inches, between the west rail of the west track and the west curb of the street is paved, while extending along the east side of the east rail of the east track is a paved strip one foot six inches wide; that the width of a Goddard buggy between the outside rims of the hubs is five feet five inches; that the defendant's coachman was driving on the right-hand (or east) side of the road near the east curb, but as to how

near the evidence is contradictory; that the plaintiff was driving upon the macadamized part of the road, and consequently was driving, as to her, on the left-hand side of the centre, measuring from curb to curb; that it was dark and the street-lights were lighted, and that at the time of the accident no electric cars were approaching that were in sight.

The evidence showed that the easterly or macadamized portion of the road was the favorite side for travelers, but that the whole width of the street was in order and condition for travel, and was used, more or less, though not so much as the macadamized portion.

Only the occupants of the two buggies witnessed the accident, and their statements are utterly variant. The plaintiff swore that she was driving on her right, being the westerly portion of the macadamized part of the street, though on the left of the centre from curb to curb; that her horse was walking; that Ford was driving recklessly and unsteadily—"this way and that," to use her own expression, "but just which way he was driving when I first saw him I cannot say." Mrs. Herrick supports the plaintiff in her claim that her horse was walking, and also that Ford was not keeping a straight course, and she testified: "As I remember it, Mrs. Winter pulled her right rein to the car track; I do not know how he pulled his, but his horse ran right into our shaft."

Ford, the defendant's coachman, swore that he first noticed the plaintiff's carriage forty feet away coming onto him. "They simply run in and locked wheels," to use his own words. "I hollered to them first, and saw them coming directly towards the horse. I was away out then to the gutter." In reply to the question how he came to drive into the gutter, he swore: "Because I saw they were coming into me and I could not get over. If I could get on the sidewalk I would. I did not have time. I could not get on that high bank there. I drove in the gutter and tried to avoid them." He also swore that his horse was walking, while the defendant "was going as fast as she could and did not let up any."

After a verdict for the defendant the plaintiff petitioned for a new trial upon the sole ground that is now urged, of error in the charge of the justice presiding at the jury trial.

The plaintiff requested the court to charge as follows :

(1)    " 1.  The plaintiff was not bound to turn her horse and vehicle across the car-track and tracks if that portion of the street where the car-tracks were located was not ordinarily and habitually traveled and if, at the same time, the macadamized portion of the road was ordinarily and habitually traveled, and if, on this occasion, the plaintiff seasonably turned her horse and vehicle to the right of the centre of the macadamized portion of the street, leaving ample room for the coachman to pass with his vehicle and horse on her left-hand side.

" 2.  The traveled part of the highway means that part which is regularly and ordinarily used by travelers with carriages, vehicles, and horses."

The judge refused so to charge, but, after referring to the character of Broad street, and to the varying character of highways, and especially to highways in the country that were not traversable throughout their whole width, he charged as follows, to which the plaintiff objected, viz. :

" The traveled part of Broad street for carriages is between the curbstones on the east and west—there is the traveled part of that road.  It includes the macadamized part of it and it includes the paved part of it, over into the centre and over to the curb-stone of the other side.  That is the traveled portion of said Broad street ; and to the right of the traveled portion of that it was the duty of Mrs. Winter to turn her team seasonably.

" In regard to the traveled portion of the way, I have stated that that portion of the highway which was laid out between the curb-stones was the traveled portion of that highway.  No matter how frequently or how infrequently people traveled over the paved portion of it, that makes no difference ; where a cart goes it was the traveled way, and some point past the centre was the traveled part, and so there was a portion that was traveled on the westerly side of the

centre of the road, if the testimony is not misunderstood by me."

The sole question now before us is whether the charge, or the refusal to charge, as above set forth, in the circumstances of the case, affords sufficient ground to entitle the plaintiff to a new trial.

Gen. Laws R. I. cap. 74, § 1, provides as follows : "Every person traveling with any carriage or other vehicle, who shall meet any other person so traveling on any highway or bridge, shall seasonably drive his carriage or vehicle to the right of the centre of the traveled part of the road, so as to enable such person to pass with his carriage or vehicle without interference or interruption."

The plaintiff admits that she was driving on the left-hand side of the centre, as measured from curb to curb, but claims that she was traveling on the right-hand side of the centre of the macadamized portion of the road, and that the macadamized portion alone constituted the *traveled part of the road* as used in the statute above set forth.

In *Clark* v. *Commonwealth*, 4 Pick. 125, decided in 1826, which was a criminal prosecution for a penalty under a statute requiring travelers in carriages, who meet in a road, to drive their carriages seasonably to the right of the middle of the traveled part of the road, the court said : "By the 'traveled part' of the road, is intended that part which is usually wrought for traveling. A traveler is not obliged, because a track happens to have been made on one side of the part so wrought, to turn to the right of the centre of this track. If he turns to the right of the centre of the wrought part, so that there is room on the wrought part for the other traveler to pass, it is sufficient, and the penalty is not incurred."

In *Commonwealth* v. *Allen*, 11 Met. 403, 405, decided in 1846, and which was a criminal prosecution for a penalty, the court, without anywhere referring to *Clark* v. *Commonwealth*, *supra*, says : "So far as any question is raised, in the present case, as to the duty of persons traveling, when they are about to meet, to drive to the right of the middle of the *traveled* part of the road,—in distinction from the

wrought part of the road—where the traveled way is of less width than the wrought way, the statute seems very plain and direct in its provisions, and prescribes, as the duty of the traveler, the turning to the right of the middle of the traveled path."

In *Daniels* v. *Clegg*, 28 Mich. 32, decided in 1873, which was an action for damages caused by a collision on the highway, the Supreme Court of Michigan, in construing the statute of that State, held that the "traveled part of the road" referred to in the statute meant that part which is wrought for traveling, and is not confined simply to the most traveled wheel-track; and the court, through Christiancy, C. J., delivering the opinion, in referring to the Massachusetts cases, after citing *Clark* v. *Commonwealth*, *supra*, with approval, uses this language (page 44), viz.: "And though the Supreme Court of that State seem to have since, in 1846 (*Com.* v. *Allen*, 11 Metc. 403), adopted the contrary interpretation now contended for by the plaintiff in error, we are not satisfied with the correctness of the decision, and think such an interpretation of the statute, as applied to common roads in this State, would be extremely pernicious, and contrary to the legislative intent."

The law of the road is thus laid down in Sherman & Redfield on Negligence, section 649 : "It is a universal custom in America for travelers, vehicles, and animals under the charge of man, to take the right hand of the road when meeting each other, if it is reasonably practicable to do so ; and this rule is enforced by statutes in many States, so far as it relates to travelers in vehicles or on horseback. The statutes upon this subject generally prescribe that travelers shall pass to the right of the 'centre of the road.' This means the centre of the lawfully worked part of the road." And, to the same effect, see Elliott on Roads and Streets, section 830.

The case at bar well illustrates the reasonableness of the construction that the traveled part of the highway means the part worked and in order and condition for travel. Broad street, a main avenue leading from a large city to thickly

settled suburbs, with a driveway forty feet in width from curb to curb, paved or macadamized, and usable throughout its whole width, is sought to be contracted to a passage fifteen feet four inches wide on its extreme easterly or macadamized strip. As a Goddard buggy is five feet five inches wide, two such buggies passing abreast would take up ten feet ten inches, so that if the plaintiff's buggy was crowded as closely as possible to the paving on the west, and the defendant's buggy was scraping the curbstone on the east, there would remain between them but four feet six inches, or a yard and a half, not a very liberal space to allow in the night-time, in passing a stranger, the steadiness of whose horse or the expertness of whose driving are unknown; and yet there remained of said driveway over twenty-four feet on the plaintiff's right, taking her evidence as strictly correct, which was obstructed by no other team or car, and was available for her to use.

If it is objected that the car-track was undesirable or unsafe to travel on, as compared with the macadamized portion of the street, the answer may be fitly given in the words of Sutherland, J., in *Earing* v. *Lansingh*, 7 Wend. 185, 187, viz.: "It is not the centre of the smooth or most traveled part of the road which is the dividing line, but the *centre of the worked part*, although the whole of the smooth and most traveled path may be upon one side of that centre, unless the situation of the road is such that it is impracticable or extremely difficult for the party to turn out. No such difficulty existed in this case. The road on the defendant's side was rough, from having been rutted or frozen, but not so much so as to present any serious obstacle to his riding or driving over it."

In *Goldrick* v. *Union R. R. Co.*, 20 R. I. 128, this court, through Matteson, C. J., delivering the opinion, said: "If it be conceded that the railroad company has a paramount right to use that portion of the street occupied by its track, since its cars are necessarily confined to its rails and cannot turn to the right or left, the public nevertheless also have

the right to use the street, including the portion occupied by the track; and it is incumbent on the railroad company, notwithstanding its paramount right, to exercise due care in the operation of its cars not to injure those who may be traveling on the street."

We think that the weight of both reason and authority favors the construction that the traveled part of Broad street at the time and place of the accident, was the whole width from curb to curb, and it is admitted that the plaintiff's buggy, at the time in question, was on the left of the centre of said traveled part as thus construed.

In *Angell* v. *Lewis*, 20 R. I. 391, 393, this court, through Tillinghast, J., delivering the opinion, says:

"In thus taking the wrong side of the road the defendant took the risk of the consequences which might arise from his inability to get out of the way of another team approaching on the right side of the road and is responsible for injuries sustained by the latter while exercising ordinary care. In other words, one who violates the 'law of the road' by driving on the wrong side assumes the risk of such an experiment and is required to use greater care than if he had kept on the right side of the road; and if a collision takes place in such circumstances, the presumption is against the party who is on the wrong side. And this is especially true where the collision takes place in the dark. . . . In *Brooks* v. *Hart*, 14 N. H. 307 (311), the court says: 'It is legal negligence in any one to occupy the half of the way appropriated by law to others having occasion to use it in traveling with teams and carriages, and he is chargeable for any injury flowing exclusively from that cause.' "

The plaintiff showed no sufficient cause or excuse for being on the wrong side of the road at the time of the accident, and the injuries she complained of were attributable mainly, if not wholly, to her own failure to exercise due care; hence, under the circumstances of this case, we find no error in the charge of the justice, to which exception was taken.

New trial denied, and case remitted to the Common Pleas Division, with direction to enter judgment on the verdict.

*Page & Page and Cushing*, for plaintiffs.

*E. C. Pierce*, for defendant.