ERNEST CARLSON *vs.* THE CONNECTICUT COMPANY.

First Judicial District, Hartford, October Term, 1919.

PRENTICE, C. J., WHEELER, BEACH, GAGER and CURTIS, Js.

No issue foreign to the facts in evidence, or in respect to which no evidence has been offered, should be submitted by the court to the jury.

Where the only issue before the jury is whether the conduct of a street-railway motorman upon a given occasion was in fact negligent or not, his experience or inexperience is immaterial and irrelevant; and therefore an instruction which impliedly invites the jury to rest their verdict upon their determination of that immaterial question, is misleading and prejudicial to the street-railway company; and this is especially true where, as in the present case, the evidence of inexperience or incapacity was entirely inadequate to warrant a finding of fact to that effect.

The plaintiff went to sleep before midnight in the grass beside the defendant's trolley-track, with one foot upon the rail, and was run over by one of the defendant's cars. In an action to recover damages the plaintiff invoked the last clear-chance doctrine, to avoid his own contributory negligence. *Held* that knowledge of the plaintiff's presence upon the track was a vitally important factor, and that the conditions disclosed by the evidence furnished no basis whatever for imputing such knowledge to the defendant's motorman, except such as he might or ought to have gained as his car approached the scene of the accident.

The doctrine of the last clear chance, or supervening negligence, has no application unless the defendant, after acquiring, or after he should have acquired, knowledge of the plaintiff's danger, has a reasonable opportunity to avoid the injury.

Argued October 8th—decided December 22d, 1919.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, brought to the Superior Court in Hartford County and tried to the jury before *Case, J.;* verdict and judgment for the plaintiff for $5,960, and appeal by the defendant. *Error and new trial ordered.*

September 28th, 1918, the plaintiff was injured by

being run over by one of the defendant's trolley-cars. He was at the time lying asleep by the side of the defendant's tracks, with one or both of his feet extending over one of the rails. As a result of his injuries both his feet had to be amputated just above the ankle.

The plaintiff lived with and was employed by one Reardon, who resided in South Windsor and upon the main highway between Springfield and Hartford, along which the trolley-line between those two cities runs. The point of injury was near the defendant's station #28. The trolley-line was here a single track laid along the east side of the traveled way, an improved road surfaced with warrenite. Its westerly rail was some five or six feet east of the easterly edge of the warrenite. The intervening space was not improved for public travel. On the outer, or easterly side of the east rail, was a strip of land within highway limits about nine feet in width. This strip was wholly unimproved and unused by travelers. Immediately east of the tracks and for a distance of some four or five feet, the ground was slightly lower than the surface of the ties upon which the rails were laid, and from that point rose gradually to the highway boundary. At that point the land was some two feet higher than were the tracks. The space easterly of the tracks was covered with a growth of uncut grass of varying length. The defendant claimed that this grass was so high that all of the plaintiff's body, except his feet, was concealed from view as he lay at the time he was injured; the plaintiff, that it was not of sufficient height and character to hide the plaintiff as he lay in it. The time of the accident was about midnight, and the place in the open country where there were no street lights.

The plaintiff had left the home of his employer, which was near station #33, on the evening of the day in question to visit Hartford. He remained in the city

until nearly eleven o'clock, and drank during that time, as he himself admitted, two glasses of beer and one of whiskey. At 10:55 he boarded one of the defendant's cars to return to his home. At station #28, which is about one mile from his destination and a half mile south of the fare limit station, which was number 31, he, for some reason which he was unable to explain, left the car and started in the direction of his home on foot. From that time until he was run over by the car, some one half or three quarters of an hour afterward, he was not, as far as is known, seen by anyone, and in the meantime no car passed the point of accident in either direction.

The car which occasioned the plaintiff's injuries was proceeding in a southerly direction toward Hartford. It was equipped with a powerful headlight, and was running at a speed variously estimated from fifteen miles an hour upward. In the front vestibule of the car, in addition to the motorman, was a constable of the town of South Windsor in uniform. He was employed by and acting under the orders of the selectmen of the town, to keep a lookout for persons or other obstructions which might be upon the trolley-tracks at a late hour on Saturday nights. At that time there was in the town a large number of tobacco growers and a very large acreage of tobacco. This industry called to the town during the growing and harvesting season a large number of employees, more or less of whom were likely to be found upon the highway at a later hour on Saturday nights than at other times. This the defendant motorman well knew, as he did also the reason for the constable's presence on his car.

As the car approached and passed the spot where the plaintiff lay, neither the motorman nor the constable saw him. The motorman, however, felt a jar, which caused him to think that he had run over something.

He brought the car to a stop as soon as possible and requested the conductor to see what had happened. The latter's investigations having proved unsuccessful, the motorman reversed his power and backed his car to and beyond the point where the plaintiff lay. When it had fully passed, the rays of the headlight revealed the presence of the injured plaintiff. The plaintiff claimed that the injury to his right leg was caused by the second passage of the car; the defendant, that both legs were injured when the car first passed.

The defendant claimed to have shown that the motorman was keeping a proper lookout ahead and giving proper attention to the performance of his duties, and that neither he nor the constable, who stood at his side, saw the plaintiff or any portion of his body before the car struck him, and that their failure to do so was due entirely to the concealed position in which the plaintiff lay.

The assignments of error, five in number, all challenge the correctness of portions of the court's charge as follows:—

1. "Now, as to the first of these assignments of negligence—that is, as to the inexperience of the men—it is of course the duty of the defendant to employ men fitted to perform their duties consistently with the general safety of the public. But to make any such assignment of negligence effective, it must not only appear by a fair preponderance of the evidence that the servants of the defendant were actually inexperienced men, but, further, that Carlson's injuries are directly chargeable to that inexperience."

2. "I, of course, suggest to you that the law expects a high degree of care from one in charge of a powerful engine of this character, to preserve not only its own passengers but other travelers who may be abroad and in the neighborhood of the railroad tracks

from injury. One in such a situation—that is, one in the situation of the motorman—is bound to keep strict watch of his road ahead, and to keep his car under control by maintaining only a speed proper for the surrounding conditions. If, in the fair exercise of these precautions, the motorman actually did not see Carlson before striking him, then neither he nor his principal is responsible here for whatever injury was inflicted upon Carlson when the car first struck him."

3. "Whether that negligence still remained a proximate or efficient cause of his injuries, would depend upon the entire situation then and whether he had been so long on the track as to charge the company with knowledge of his presence there."

4. "Of course his continued presence on the track in a drunken stupor, if he was in a drunken stupor, was an act of continuing negligence; but if his position was one which was or ought to have been obvious to the motorman of an approaching car, I think you must find that the negligence of the motorman, assuming that you find him to have been negligent under all these conditions, was the proximate cause of the injury without reference to any conduct of the plaintiff, and in that event the plaintiff must have a verdict."

5. "Remembering all the principles of negligence, as I have suggested them to you, and the specific allegations of negligence which refer to this branch of the case by the plaintiff, if you find that the man was injured by losing his remaining foot on this second trip of the car, I think the question of contributory negligence is removed—absolutely removed—from this feature of the case."

*John T. Robinson,* for the appellant (defendant).

*Joseph P. Tuttle,* with whom were *Jacob Schwolsky* and *Morris Blumer,* for the appellee (plaintiff).

PRENTICE, C. J.   The portion of the charge first complained of was called out by the allegation in the complaint that the plaintiff's injuries were caused, among other things, by the defendant's negligence in failing to provide competent and experienced operatives for its car.

This was not a good allegation of actionable negligence.   Had its charge been well founded, the defendant would not for that cause alone have rendered itself liable to the plaintiff.   Whether those concerned in the operation of the car were competent or incompetent, experienced or inexperienced, the defendant would not be liable in this action in either event, in the absence of some negligent act or omission on their part.   If there was no such act or omission, there would be no liability on the part of the defendant, however inexperienced, incompetent and unfit for their tasks the defendant's employees may have been.   If there was such act or omission contributing to the plaintiff's injuries, the defendant would be liable however experienced and ideally competent the negligent actor servant was.   The liability of the defendant, if any, must find its basis in negligent conduct on the part of its servant or servants.   It cannot rest upon their want of qualification for their task alone.   *Monroe* v. *Hartford Street Ry. Co.,* 76 Conn. 201, 209, 56 Atl. 498.

The instruction given, considered in the abstract, is perhaps not open to criticism, and if rightly understood and applied would not be objectionable.   As furnishing the rule for the guidance of a jury under concrete conditions like those presented by the case at bar, it is, however, open to the objections, of practical importance, that it was calculated to give the jury the impression that actionable negligence on the part of the defendant might be predicated upon its employment of incompetent and inexperienced servants, that it tended

to divert the attention of the jury from the real issue, that is to say, whether or not the defendant's employees were guilty of negligent conduct in the operation of its car, to one in itself immaterial, and impliedly, at least, invited them to find a ground of recovery in that which in and of itself would not create liability, and that it submitted to their consideration as constituting an issue matter which the evidence did not raise to the dignity of one.

With respect to the latter matter, it is to be remembered that the only evidence upon which a finding of the motorman's and conductor's inexperience and incapacity could be predicated, was that they were spare hands who had been in the defendant's employ only a month and been on the South Windsor run only four or five days. For aught that appears they may have had long experience elsewhere and been fit and competent in a high degree. Manifestly the jury could not reasonably have found that they were either inexperienced or incapable upon such proof alone. An instruction which left the door even slightly ajar for the entrance of a finding of negligence on the defendant's part which did not arise out of the acts of its servants, was calculated to do the defendant harm. "It is the duty of the court to submit to the jury no issue foreign to the facts in evidence, or in respect to which no evidence has been offered." *Fine* v. *Connecticut Co.*, 92 Conn. 626, 630, 103 Atl. 901.

The third and fourth of the criticized passages were used in connection with the court's instructions touching the so-called last clear-chance doctrine, invoked by the plaintiff to avoid the effect of his own negligence in placing himself in the dangerous position in which he was when injured. Knowledge, actual or imputed, on the part of the defendant or its agents of the plaintiff's exposure where he lay, was a vitally important factor

in the application of the principles under consideration. Given that, it would be difficult indeed for the defendant to escape liability. In the first of the two passages the court plainly implies that such knowledge might be imputed to the defendant from the mere lapse of time during which the plaintiff had lain where he was when injured. When it is remembered that the spot where he wittingly or unwittingly sought a resting-place was one quite away from the traveled roadway and in the unlighted country, that his body was more or less concealed by the growing grass in which he lay, that the time was near midnight, that he had been there not more than one half to three quarters of an hour, that no car had passed meanwhile, that no servant or agent of the defendant had had occasion during that time to be in that vicinity, and that, as far as appears, no person knew of his whereabouts after he started to walk home,—it is clear that conditions justifying the imputation to the defendant of knowledge of the plaintiff's presence in the grass by the side of its tracks were absolutely wanting. Clearly the defendant could not upon the evidence reasonably be charged with knowledge that the plaintiff lay where he did, except as such knowledge was or ought to have been gained by the motorman as his car approached the scene of the accident.

Passing now to the second (4) of the two passages, which immediately followed the first, we find the court saying to the jury that although the plaintiff, in remaining where he was, was guilty of continuing negligence, yet if his position was one which was or ought to have been obvious to the motorman, they must find that the latter's negligence, assuming that he was negligent, was the proximate cause of the plaintiff's injury, without reference to any conduct of the latter; and that, in that event, the plaintiff must have a verdict. This instruction predicated liability upon the ac-

quisition by the motorman of knowledge, either actual or implied, of the plaintiff's exposed position, and ignored another condition of equal importance, to wit, that the motorman subsequently had the opportunity, by the exercise of reasonable care, to save the plaintiff from harm.· *Fine* v. *Connecticut Co.*, 92 Conn. 626, 631, 103 Atl. 901. Under the charge the defendant would, in the application of the last clear-chance doctrine, be liable, notwithstanding the plaintiff's contributory negligence, if its motorman failed to stop his car and thus save the plaintiff from harm, although the plaintiff was hit the very instant after the motorman became, or ought to have become, aware of the plaintiff's danger.

As there must be a new trial, it is unnecessary to inquire whether or not the defendant's third and fifth assignments of error are well made.

There is error and a new trial is ordered.

In this opinion the other judges concurred.