FREDERICK A. KURTZ, ADMINISTRATOR, (ESTATE OF ED-
WARD KURTZ) *vs.* THE MORSE OIL COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued December 2d, 1931—decided February 16th, 1932.

*Ralph O. Wells* and *William S. Locke,* with whom was *Carl F. Anderson,* for the appellant (defendant).

*William M. Citron,* for the appellee (plaintiff).

BANKS, J. The plaintiff's decedent, a boy of the age of fifteen and one half years, was killed as a result of a collision between a car which he was driving and the oil truck of the defendant, as it came around a curve in the road from the opposite direction. The road was of macadam with gravel and dirt shoulders. At the point of collision there was no shoulder on the plaintiff's right side of the road which was the inside of the curve, the macadamized roadway ending with a ditch, but on the outside of the curve on the defendant's right there was a shoulder four feet in width and beyond that a graded section two and a half feet wide. The only questions raised upon the appeal are alleged errors in the charge, and the refusal of the court to charge as requested, upon two points, first, the determination of what constitutes the "traveled portion of the highway," and second, the bearing of the age of plaintiff's decedent upon the question of his contributory negligence.

The rules of the road (General Statutes, § 1639) require of travelers meeting upon the highway that each turn to the right so as to give the other "half of the traveled portion of such highway, if practicable," and a fair and equal opportunity to pass. One of the issues in the case was whether the plaintiff's decedent or the defendant's driver was guilty of a vio-

lation of the rules of the road in failing to yield half of the traveled portion of the highway. The defendant requested the court to charge the jury that the traveled portion of the highway was the portion designed for ordinary travel, that is the paved portion exclusive of the shoulders. The court did not so charge, but told the jury that, while the paved portion of the road was primarily intended for ordinary travel while the shoulders were not, it did not follow as a matter of law that the paved portion was or was not the only traveled portion, and left it to the jury to determine as a question of fact "where the traveled portion of the highway at that point was, that is, what portion was customarily traveled by persons upon that highway; not what portion was occasionally traveled, but what portion was usually or customarily traveled."

As early as 1797 a statute of this State embodying the customary rule of the road, required the driver of a vehicle upon meeting another in the highway "if mutual safety require, and the ground or way will permit, to turn or bear his carriage each driver to his right hand, or to slacken his or her pace or gait, or otherwise endeavour to give each to the other a fair and equal chance or advantage to pass." Connecticut Statutes, Rev. 1808, p. 634. In the Revision of 1821 the statute provided that "when the drivers of any stages, coaches, waggons, chaises, sleighs, cutters, or any other carriage for the conveyance of persons, shall meet in the public highway, and have occasion to pass each other, it shall be the duty of each to turn to the right, so as to give the other one half of the travelled path, if practicable, and to slacken their pace, so as to give each a fair and equal advantage to pass." Connecticut Statutes, Rev. 1821, Title 96, § 1, p. 438. The "travelled path" was the beaten path, made usable by the passage of vehicles, and fairly indicated to the

traveler by the most traveled wheel tracks of the vehicles passing over it. When graded and surfaced roads became common the whole surface of the road which was wrought for travel, rather than that portion where the wheel tracks showed the most travel, was the portion of the highway layout which was usable for travel and intended to be used. This wrought part of the road was usually well defined, and clearly indicated to the traveler the portion of the road intended for travel. Accordingly, under statutes similar to our own requiring the traveler to give to one whom he meets "half of the traveled portion of the highway" or to pass to the right of "the center of the traveled part of the road," it was generally held that the traveled part of the highway is to be construed as the part of the road which is wrought for travel. *Daniels* v. *Clegg*, 28 Mich. 32; *Winter* v. *Harris*, 23 R. I. 47, 49 Atl. 398; 3 Shearman & Redfield on Negligence (6th Ed.) § 649; 1 Berry on Automobiles (6th Ed.) § 263, and cases there cited. We still have in this State many miles of so-called "dirt roads." The worked portion of these highways is the portion intended for travel and ordinarily is literally the "traveled portion" of the highway. The extent of the surface of such roads wrought for travel is well defined and obvious to the traveler, and the ruling of the courts construing the statutory phrase "traveled portion of the highway" to mean the portion actually wrought for travel, furnishes a practical and certain test for the guidance of the traveler in the observance of the rules of the road. The automobile has brought about, or at least accelerated, the building of roads, such as the one here in question, of macadam, or concrete, or other hard surfaced material. Ordinarily, these roads are constructed with a dirt or gravel shoulder of varying width on each side of the hardened surface of the

road. The question here involved is whether the "traveled portion" of the highway includes these dirt or gravel shoulders. Counsel state that they have been unable to find any decisions upon this precise point nor has our search been more successful, though a number of cases are cited upon defendant's brief in which the parties and the court have apparently assumed that the paved portion of the road constituted the traveled portion. It seems to us fairly obvious that the hardened surface of such a highway is the portion intended for travel, and that the dirt shoulder is intended for emergency use only, a safe place of refuge when the traveler is forced off the road proper by the exigencies of modern traffic. The hard surfaced road then corresponds with the portion of the old dirt road which was "wrought for travel," being the only portion of the road intended for ordinary travel and prepared for such travel. The dirt shoulder is not a part of the road proper, but is provided as an additional factor of safety. Where the shoulders on both sides of the road are of the same width, as would ordinarily be expected where the configuration of the land permitted, no question of course arises. Where, as in the present case, there is no shoulder on one side of the road, and one of considerable width on the other side, the center line of the traveled portion of the highway, if that phrase is construed to include the dirt shoulders of the road, might in an extreme case be beyond the edge of the hard surfaced road. If that construction is adopted a traveler could not safely rely upon the white lines, so frequently painted upon the surface of the road at curves, as indicating the portion of the highway upon which he could legally and safely travel. We may fairly impute to the legislature an intention, in adopting rules of the road controlling the conduct of the traveler, to

provide a test sufficiently definite and certain that the ordinary traveler may reasonably be expected to be able to govern his conduct in compliance with the rule. We think the ordinary traveler could justifiably assume that he was complying with the rules of the road if he kept to the right of the center line of the hardened surface of the highway upon which vehicles are normally expected to travel.

The court in its charge indicated that the traveled portion of the highway was "not what portion was occasionally traveled, but what portion was usually or customarily traveled." As it is a matter of common knowledge that the shoulders of a road are only occasionally traveled, and the hardened surface is the portion customarily traveled, the jury, if they followed this instruction, could hardly have reached any other conclusion than that the hardened surface of the road constituted the traveled portion of it. The court, however, also charged that there were "undoubtedly conditions existing in which the traveled portion is not so limited to the hard or paved part" and that it was a question of fact for the jury as to "where the traveled portion of the highway at that point was." This permitted the jury to find that the traveled portion of the highway at that point extended beyond the paved portion, and included the dirt shoulder of the road. As already indicated, we think the statute permits and requires a construction that the traveled portion of the highway comprises only that portion intended for normal travel, excluding the dirt shoulders on either side. There was error in this portion of the charge.

The plaintiff's decedent was about fifteen and one half years of age, and the defendant offered evidence that he had no operator's license. The statute then in force, now General Statutes, § 1569, provided that

"no person shall operate a motor vehicle upon any public highway of this state until he shall have obtained from the commissioner a license for such purpose," and that no such license should be issued "until the commissioner is satisfied that the applicant is over sixteen years of age and is a suitable person to receive such license." The defendant requested the court to charge the jury that the plaintiff's decedent, in operating a motor vehicle without a license and while he was under sixteen years of age, was negligent as a matter of law, and that such negligence would bar a recovery if it was a proximate cause of the accident, and further that, in determining whether he was in the exercise of due care, they might take into consideration the fact that he was under sixteen years of age. The court did not comply with these requests but told the jury that the age of the plaintiff's decedent was relevant only upon the question of damages, that whether he had a license or was under the age at which one could be issued to him, whether he was competent or incompetent, experienced or inexperienced, was not the test of his negligence, which must be determined by his acts and conduct in the operation of his car. The charge of the court was in accord with the repeated decisions of this court. We have uniformly held that there was no causal relation between the fact that the operator of a car was licensed or unlicensed, and an injury occurring during its operation, and that the lack of such license could not be deemed to be the proximate cause of the injury and was not therefore actionable negligence, either as a ground of recovery or of defense. *Black* v. *Hunt,* 96 Conn. 663, 115 Atl. 429; *Shea* v. *Corbett,* 97 Conn. 141, 115 Atl. 694; *DeVite* v. *Connecticut Co.,* 112 Conn. 670, 151 Atl. 320. The section of the motor vehicle laws adopted in 1911 (Public Acts, 1911, Chap.

85, §19) which barred recovery by an owner, and prior to 1919 by the operator, of an unregistered car or one operated by an unlicensed driver, was repealed in 1929. Public Acts, 1929, Chap. 256. Except in cases governed by that statute we have held that the lack of license did not operate to bar a recovery. In *Black* v. *Hunt,* we said (p. 666): "There is in this case no claim, and there could be no claim, that the failure of the driver to possess a license directly contributed to cause the collision. It was merely a condition attending the collision, not a cause of it." In *DeVite* v. *Connecticut Co.,* we said (p. 671): "The negligence of the operator is to be determined by the facts existing at the time of the accident; whether the operator has a license is a wholly immaterial consideration." Nor was the fact that plaintiff's decedent was under sixteen years of age relevant to the issue of his negligence. The statute does not directly prohibit the operation of a motor vehicle by one under the age of sixteen, but, since he cannot obtain a license, he is for that reason unable legally to drive a car. The claim of the defendant is that the legislature has recognized that one under that age, by reason of his immaturity and lack of discretion, is not competent to drive a car upon the highway with safety to the driving public, and has therefore in effect prohibited his driving because of his inexperience and incompetence. The inexperience or incompetence of the driver of a car is not material upon the issue of his negligence. *Carlson* v. *Connecticut Co.,* 94 Conn. 131, 108 Atl. 531, 95 Conn. 724, 112 Atl. 646; *Black* v. *Hunt, supra.* In the first *Carlson* case we said (94 Conn. p. 136): "Whether those concerned in the operation of the car were competent or incompetent, experienced or inexperienced, the defendant would not be liable in this action in either event, in the absence of some negligent

action or omission on their part. If there was no such act or omission, there would be no liability on the part of the defendant, however inexperienced, incompetent or unfit for their tasks the defendant's employees may have been;" and in the same case, upon a second appeal, we said (95 Conn. p. 731): "Evidence of incompetency or inexperience is irrelevant because it does not prove or tend to prove the specific negligence alleged. In actions of this character, evidence of the competency or experience, or of the incompetency or inexperience, of either party or of his servants, is inadmissible as evidence of negligence, or the reverse. The connection is too remote." Since the only importance of the age of plaintiff's decedent was as indicative of his immaturity and his consequent inexperience and incompetence it was, under these decisions, immaterial upon the issue of his negligence. In *Black* v. *Hunt, supra,* the driver of the defendant's car was a boy fifteen years of age. We held that evidence of his incompetence and inexperience was not material, and that the plaintiff's claim that, because the driver was under sixteen years of age, he was incompetent as a matter of law and the car an outlaw upon the highway, was not sound. It is the way in which the car is being operated that brings about the injury and, as is the case with an unregistered car, the age or experience of the operator has no proximate causal relation to the injury. *Gonchar* v. *Kelson,* 114 Conn. 262, 158 Atl. 545.

The criticism of the charge of the court with regard to the age of the plaintiff's decedent and his failure to have a license was not well founded.

There is error and a new trial is ordered.

In this opinion the other judges concurred.