FARM BUREAU MUTUAL INSURANCE CO.
*vs.*
GEORGE F. KELLEY

Androscoggin.   Opinion, July 7, 1959.

*Berman & Berman,* for plaintiff.

*Robinson, Richardson & Leddy,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

TAPLEY, J.   On exceptions.   The case was tried before a jury in the Superior Court, within and for the County of Androscoggin.   Defendant requested an instruction to be included in the charge of the presiding justice to the jury. The requested instruction was refused and the defendant took exceptions to the refusal.   The case involves the collision of two motor vehicles which took place on Cushing Street, a public street in the City of Auburn.   The accident happened on the morning of January 7, 1958.   Plaintiff, through its agent and servant, was operating its motor vehicle in an easterly direction along Cushing Street, while

the defendant was operating his car in a westerly direction on Cushing Street. The only two witnesses to the accident were Mr. Walker, driver of plaintiff's car, and Mr. Kelley, the defendant. They do not agree as to each other's actions immediately preceding the impact but there is no disagreement as to the presence of parked cars and trucks on the street and that the northerly half of the west bound lane was blocked at the point of accident. On the northerly side of the street is a curbing, while the southerly side of the street is bordered by a gravel shoulder. On the morning of the accident there were cars parked in the area on the graveled shoulder between the edge of the macadam and a fence. Pleasure cars were parked along the curbing on the northerly side, with a large tractor and trailer tank unit double-parked. Easterly of the parked pleasure cars was a truck parked at right angles to the northerly curbing with its front end at or near the center line of Cushing Street. The two cars collided at a point between the truck, which was double-parked, and the southerly edge of the macadam road. This area lies south of the parked truck and on the southerly side of the middle of the wrought way which would be on plaintiff's right and defendant's left as the cars approached each other. A rule of the road statute is involved. This statute is Sec. 83, Chap. 22, R. S., 1954 and reads:

> "**Teams Meeting Shall Turn to Right:**—When persons traveling with a team are approaching to meet on a way, they shall seasonably turn to the right of the middle of the *traveled part* of it so that they can pass each other without interference. When it is unsafe, or difficult on account of weight of load to do so, a person about to be met or overtaken, if requested, shall stop a reasonable time, at a convenient place, to enable the other to pass." (Emphasis supplied.)

The defendant requested the following instruction:

> "You are instructed that the *traveled part* of the road in this case is that part of Cushing Street to

the south of the parked vehicles that have been described by the parties as being present at or near the point of accident." (Emphasis supplied.)

The presiding justice refused to give this instruction, and to this refusal the defendant excepted. The requested instructions, in essence, becomes a definition of the words "traveled part" of the way as used in Sec. 83, Chap. 22, R. S., 1954 and when applied to the circumstances of the instant case means that portion of the road between the parked vehicles and the edge of the road.

The presiding justice in his charge informed the jury of the existence of the statute (Sec. 83, Chap. 22, R. S., 1954) and explained the effect of its violation as evidence of negligence. The charge as given appears satisfactory to both parties as lack of exceptions testify.

The statute was passed by the Legislature at a period when teams were the principal mode of transportation. It is reasonable to suppose that the legislators who enacted this rule of the road were not cognizant of the fact that the statute would be subject to construction under road and traffic conditions as obtain in this case where the temporary parking of motor vehicles causes a diminishing of the width of the wrought portion of the way. This statute of ancient vintage is now applicable to the operation of motor vehicles on our public highways. *Bragdon* v. *Kellogg,* 118 Me. 42.

If the words, *"traveled part"* of the highway, as used in the statute, mean that portion of the road which is bounded by the curbing on the one side and the graveled shoulder on the other, then the presiding justice properly refused the requested instruction. On the other hand, if under the circumstances of this case the *traveled part* applies to that portion of the highway between the double-parked truck and the southern edge of the macadam road which, incidentally, was practically that portion south of the center line, then

the presiding justice was in error in refusing to give the instruction.

In the case of *Palmer* v. *Barker*, 11 Me. 338, decided in 1834, the court was concerned with a law of the road statute which required travelers to keep " 'to the right of the centre of the travelled part of the road.' " The court said, on page 339:

> "The design of the law is to prevent travellers, when going on the road in opposite directions from obstructing each other, or so interfering as to produce injury or expose them to danger."

*Winter* v. *Harris*, 23 R. I. 47, construes a statute similar to the one in the instant case. The accident concerned the collision of two carriages being driven on a public street toward each other. The street at the place of the accident was 40 feet wide from curb to curb, 24 feet and 8 inches of the width was paved with cobblestones and the remainder was macadamized. The macadamized portion was favored by users of the street but the whole width was in good order and condition for traveling. The plaintiff claimed that she was traveling on the right hand side of the center of the macadamized part of the road which was commonly and habitually used by travelers, and that it was this portion that constituted the "traveled part of the road as used in the statute - - -." The court said, on page 54:

> "We think that the weight of both reason and authority favors the construction that the traveled part of Broad street at the time and place of the accident, was the whole width from curb to curb, and it is admitted that the plaintiff's buggy, at the time in question, was on the left of the centre of said traveled part as thus construed."

The entire paved area of a street must be considered in determining the position of the center line. *Fuson* v. *Cantrell*, 166 S. W. (2nd) 405 (Tenn.). In *Elswick* v. *Charleston*

*Transit Co.,* 36 S. E. (2nd) 419, (W. Va.), the question of the location of the "center of the highway" was involved. The court, on page 426, said:

> "Here, Washington Street, as this record discloses, was well established on the ground, the outer boundaries being the north and south curbs of the street. The fact that the southern third of the street at times may have been used for parking purposes does not serve to confine the width of the street to the remaining two-thirds lying to the north thereof."

*Clark* v. *The Commonwealth,* 4 Pick. 125 (Mass.), treats of a statute comparable in its terms to the one under discussion. The court said of the statute, on page 126:

> "By 'the travelled part' of the road is intended that part which is usually wrought for travelling. A traveller is not obliged, because a track happens to have been made on one side of the part so wrought, to turn to the right of the centre of this track. If he turns to the right of the centre of the wrought part, so that there is room on the wrought part for the other traveller to pass, it is sufficient, - - - -."

In *Jaquith* v. *Richardson,* 8 Metcalf 213 (Mass.), the court in its opinion made reference to the ruling in *Clark* v. *The Commonwealth, supra,* by saying, on page 216:

> "We have no doubt of the correctness of the ruling in that case, and that the revised statutes are to receive a similar construction. But the circumstances there considered are different from those in the case at bar, and they do not control it. We are now called upon to apply the law, which is a most beneficial one, and conducive to the safety and convenience of all the inhabitants of the Commonwealth, to a state of the public road, when, from the season of the year, and the quantity of snow on the ground, the wrought path was obscured from the eye, and the travelled and beaten

path was on the right of the centre of the wrought path. And here we cannot doubt but that the path then beaten and travelled by those passing and re-passing on the way, with their sleds and sleighs, was one of those roads contemplated by the fram-ers of the statute, and within its spirit and pur-view, and that the wrought part is not, for the time being, the travelled path to which the law of the road is restricted; but that the law is as well applicable to the path, as actually travelled upon the snow, as it is to the wrought part in different seasons of the year."

The *Jaquith* case had no quarrel with the ruling in the *Clark* case as it was applied to the circumstances there obtaining but due to the fact that the *Jaquith* case was concerned with a roadway which was for the most part obscured from the eye by fallen snow, the court determined that the path beaten and traveled by those passing and repassing on the way had established the *traveled way* to which the pro-visions of the statutes would apply. See *Lahiff* v. *McAloon* (Minn.), 189 N. W. 435.

There are no cases in this jurisdiction which can be cited as defining that portion of Cushing Street south of the parked vehicles as being the *traveled part* of the way as the term is used in Sec. 83, Chap. 22, R. S., 1954. The statute was enacted many years ago and under circumstances of traffic conditions much different than prevail today. The provisions of the statute, however, that require approaching traffic to seasonably turn to the right of the middle of the road in order that vehicles may pass each other without col-lision and damage, constitute a sound and reasonable rule of the road under present day traffic conditions. We have cited rulings of other jurisdictions based on similar statutes which determine that under ordinary circumstances the traveled portion of the way is that part of the way wrought for that purpose and commonly used as such or so con-structed that it could be used. Where the wrought portion

of the way customarily used for traffic is obscured from view by fallen snow and traffic has beaten a path or track on it, then that portion becomes the *traveled part* of the way within the intent and purview of the statute.

The circumstances of this case present entirely different conditions. In the case at bar the narrowing of the normal width of Cushing Street was occasioned by the parked automobiles and trucks to the extent of obstructing at one point an entire one-half of the wrought way. According to the testimony, the jury could have found that the defendant drove his vehicle on his left hand side of the road to clear the first parked truck then returned to his own side of the road until he reached the double-parked trailer truck, at which time he swung again to his left continuing along on what would ordinarily be the plaintiff's side of the highway to a point where the cars collided. Upon this factual aspect of the case, the defendant urges that the provisions of Sec. 83 apply and that the presiding justice was in error in not instructing the jury that the traveled part of the way was that portion of the road south of the parked cars. The narrowing of the highway was not caused by fallen snow, but its width was diminished by the presence of parked cars. It is common knowledge that motorists are continually confronted with problems of proper operation of motor cars in face of traffic conditions created by parked vehicles. The statute was enacted for the purpose of regulating horse drawn vehicles at a time when automobiles were unheard of. There were no macadam or cement roads with gravel shoulders—there were no markings dividing the traveled portions, but only gravel or dirt roads bearing the evidence of travel as made by the passing and repassing of horse drawn vehicles. In time, and by use, a *traveled part* of the way was established by distinct tracks upon the face of the earth. In winter when the snows came, the *traveled part* was created in the same manner although possibly not on

the same part of the road. The Legislature in its wisdom saw the advisability of regulating the use of teams on this kind of way. From this type of road has developed the modern highway and in place of the horse and buggy we have the automobile. Certainly the framers of the statute could never have foreseen its application to the circumstances in this case. The parked cars on the northerly side of Cushing Street, along with the double-parked tank truck and the truck that was protruding into the street, constituted a mere temporary occupancy of the street. They themselves were making use of a portion of the "traveled part" of the way. They by their presence for a comparatively brief time did not change in any manner the *traveled part* of the way as it existed previous to their presence on the road. The parked vehicles did not in any way affect or change the *"traveled part"* of the way but did create a traffic condition which required extra care and caution on the part of the motorists driving in this area.

We are of the opinion and so hold that under the circumstances of this case the words of the statute "traveled part" are not limited in application to that portion of Cushing Street to the south of the parked vehicles. The presiding justice properly charged as to the rule of the road statute (Chap. 22, Sec. 83, R. S., 1954) according to the factual aspect of the case and his refusal to give the requested instruction was not error.

*Exceptions overruled.*