ZAKRZEWSKI, Appellant v. HYRONIMUS, Respondent

(136 N.W.2d 572)

(File No. 10143. Opinion filed August 26, 1965)

**Dana, Golden, Moore & Rasmussen,** and **Peder K. Ecker,** Sioux Falls, for plaintiff and appellant.

**Davenport, Evans, Hurwitz & Smith** and **James R. Adams,** Sioux Falls, for defendant and respondent.

ROBERTS, P. J. This action was brought by Leonard S. Zakrzewski, plaintiff, in the Circuit Court of Minnehaha County against Floyd W. Hyronimus, defendant, to recover for personal injuries sustained in an automobile collision. The jury returned a verdict for the defendant. The court entered judgment on the verdict and dismissed the complaint. Motion for new trial was overruled, and plaintiff appeals.

The complaint herein alleges that the collision occurred on February 19, 1961, at approximately 7:50 o'clock in the morning, near the intersection of Madison Street and Lincoln and Burnside Avenues in the City of Sioux Falls and that defendant was negligent in failing to have his motor vehicle under control, to maintain a proper lookout and to yield half of the traveled portion of the street and in driving at an excessive rate of speed under the circumstances and driving while visibility and view were impaired.

The answer admitted that substantially at the time and place stated in the complaint a collision occurred between automobiles operated by plaintiff and defendant. The answer denied all allegations not admitted and alleged that the collision was caused by negligence on the part of the plaintiff which was more than slight.

The evidence shows that defendant was driving easterly on Madison Street and approaching the place where that street is intersected by Lincoln Avenue extending north and south when he was suddenly blinded by the rising sun. Burnside Avenue enters the intersection from a southeasterly direction, but does not cross it. The streets in question are paved. The north curb line of Madison Street continues practically in a straight line from the west across the intersection, but the south curb line curves a distance of about 200· feet to the southeast to the intersection widening the street from 60 feet to 108 feet at the west edge of the intersection. The wider area provides for a more continuous course on Madison and Burnside streets for the movement of traffic. Defendant testified that intending to turn to the right into Burnside Avenue he applied his brakes when blinded by the sun, had stopped his car before the collision and that

plaintiff ran into his car. Plaintiff approached the intersection on Burnside Avenue and turning in a westerly direction saw as he left the intersection the car driven by defendant. The left two feet approximately of the front of each of the cars collided. The investigating officer took photographs of the cars and the area before the cars were removed. Debris is shown in the photographs and was observed by the officer. There was snow on the ground and traffic lane markings were not visible. The debris and point of impact was estimated to be 14 to 21 feet from the west edge of the intersection.

SDC 44.0309 provides that "the driver of a vehicle shall drive the same upon the right half of the highway * * * unless it is impracticable to travel on such side of the highway and except when overtaking and passing another vehicle" subject to certain limitations not here material. SDC 44.0311 relating to right of way of vehicles proceeding in opposite directions provides that the drivers "shall pass each other to the right, each giving to the other at least one-half of the main traveled portion of the roadway as nearly as possible." Ordinances of the City of Sioux Falls are substantially similar in language.

Plaintiff asserts errors in certain instructions given and certain requested instructions which were refused. The court informed the jury as to the existence of the statutes requiring drivers of motor vehicles to proceed upon the right half of streets and when proceeding in opposite directions to pass each other to their right "giving to the other at least one half of the main traveled portion of the roadway as nearly as possible" and the jury was instructed that violation thereof, without legal excuse, constitutes negligence. The court defined "roadway" in the language of an ordinance of the City of Sioux Falls as "that portion of a street between the regular established curb lines or that part devoted to vehicular traffic". Among the instructions requested by plaintiff pertaining to his theory of the case are the following:

> "You are instructed that the phrase 'main traveled portion of the roadway' as used in the preceding instruction means the part of the roadway actually used for travel and not the entire width of the highway."

"You are instructed that the main traveled portion of the roadway is that portion of the roadway which under the circumstances then and there existing, carries the greatest volume of traffic. You are further instructed that the main traveled portion of the roadway may, because of the accumulation of ice, snow or other temporary conditions be established by vehicular traffic on the roadway temporarily in such portion of the roadway as would not under ordinary circumstances and without the ice, snow or other temporary conditions constitute the main traveled portion of the roadway."

■ It is elementary that a party to an action is entitled to have the jury instructed with reference to his theory of the case where such theory is supported by competent evidence and the instruction is properly requested, and this although such theory may be controverted by evidence of the opposing party.

■ In McCleod v. Tri-State Milling Co., 71 S.D. 362, 24 N.W.2d 485, we said: "The violation of a statute or ordinance, designed for the benefit of individuals, is of itself sufficient to prove such a breach of duty as will sustain an action for negligence brought by a person within the protected class if other elements of negligence concur." The general rule is that violation, without legal excuse, of a statute enacted for reasons of safety constitutes negligence per se and not merely prima facie evidence of negligence. Albers v. Ottenbacher, 79 S.D. 637, 116 N.W.2d 529; Roth v. Jelden, 80 S.D. 40, 118 N.W.2d 20; Grob v. Hahn, 80 S.D. 271, 122 N.W.2d 460.

In the case of Schnabel v. Kafer, 39 S.D. 70, 162 N.W. 935, decided in 1917, this court was concerned with a statute which required travelers proceeding in opposite directions to "pass to the right of the middle of the traveled part" of a bridge or road. This court said: "It is appellant's contention that the phrase, 'middle of the traveled part of the bridge or road,' as used in said statute, means a line parallel to and halfway between the boundary lines of the 66-foot right of way.   *   *   *   Our statute is specific. By use of the word 'traveled,' it was intended to distinguish the portion of the right of way that is actually used by

the traveling public from the entire 66-foot strip that belongs to the public for highway purposes." The conditions there considered are entirely different from those in the instant case. Citing cases from other jurisdictions construing similar statutes (Fales v. Dearborn, 1 Pick. (Mass.) 345, and Earing v. Lansingh, 7 Wend. (N.Y.) 185) it is pointed out in the Schnabel case that the courts therein were concerned with streets improved throughout their entire width and in condition for travel and what was therein said was not applicable to a country road where the traveled part was created by the passing and repassing of vehicles. In the Earing v. Lansingh case the court construed the words "traveled part of the road" as applied to the circumstances there obtaining as follows: "It is not the center of the smooth or most traveled part of the road which is the dividing line, but the center of the worked part, although the whole of the smooth or most traveled path may be upon one side of that center, unless the situation of the road is such that it is impracticable or extremely difficult for the party to turn out. No such difficulty existed in this case. The road on the defendant's side was rough, from having been rutted and frozen, but not so much so as to present any serious obstacle to his riding or driving over it."

Winter v. Harris, 23 R.I. 47, 49 A. 398, 54 L.R.A. 643, construed a statute requiring travelers proceeding in opposite directions to drive "to the right of the center of the traveled part of the road". The street where the accident occurred was 40 feet wide between curb lines, of which 24 feet 8 inches was paved and the remainder macadamized. Plaintiff asserted that she was traveling on the right hand side of the center of the macadamized portion which was the traveled part of the road used by the public. The court considering this contention said: "We think that the weight of both reason and authority favors the construction that the traveled part of Broad street, at the time and place of the accident, was the whole width from curb to curb, and it is admitted that the plaintiff's buggy at the time in question was on the left of the center of said traveled part as thus construed."

See also Shearm. & Redf. Neg. § 706; Elswick v. Charleston Transit Co., 128 W.Va. 241, 36 S.E.2d 419; Farm Bureau Mutual Ins. Co. v. Kelley, 155 Me. 276, 153 A.2d 603; Fuson v. Cantrell, 25 Tenn.App. 608, 166 S.W.2d 405.

We think that the "main traveled portion of the roadway", referred to in the statute, was under the circumstances of this case at the time of the accident the width of the street between the curb lines. Thus determining the center of the street the jury could have found from the evidence that defendant was upon the right or south half of the street when his car which was stopped was struck by the car driven by plaintiff. Upon the undisputed facts the area of the collision and the intersection was not impassable because of drifted snow or other unusual conditions and it was not "impracticable" to travel on the right half of the street. The trial court correctly instructed the jury as to the statutory rules of the road with respect to motor vehicles proceeding in opposite directions and the factual aspects. Plaintiff's basic theory was without support in the evidence and refusal to give instructions with reference thereto was not error.

The trial court gave to the jury the statutory definition of an "intersection". SDC 44.0301(16). The court then instructed the jury that a driver of a motor vehicle intending to make a left turn at an intersection on a two-way street must approach in the lane of traffic to the right of, and nearest to, the center line of the street and in turning to pass beyond the center of the intersection, passing as closely as practicable to the right thereof, before turning to the left. Plaintiff objected to the giving of the definition and instruction on the ground that the accident occurred outside the limits of an intersection.

There was evidence that both cars were in the south lane of Madison Street at the time of the impact and after they came to rest. It is undisputed that plaintiff had a clear and uninterrupted view of traffic before the collision occurred. Plaintiff testified: "Well, when I entered the intersection and came off of Burnside I had my car in second gear, and I was going about ten miles an hour. When I saw defendant's car, I was

right at the edge of Lincoln, going into Madison. Defendant's car was about 50, 60 feet ahead of me on the north side of the road eastbound on Madison. When I saw defendant's car, I slammed on my brakes and turned to the right."

■■ The trial court did not err in giving the instruction because as counsel assert the collision occurred beyond the limits of the intersection. See Perez v. Hartman, 39 Cal.App. 601, 179 P. 706; Rice v. Lowell Buick Co., 229 Mass. 53, 118 N.E. 185. The jurors believing the evidence offered on behalf of defendant as to the point of impact and the position in which the two cars were found immediately after the accident were justified in concluding that plaintiff violated not only the statute requiring drivers proceeding in opposite directions to keep to the right, but also the statutory law of the state and the ordinance of the city applicable to making a left turn at an intersection. The jury could have found that if plaintiff had complied with the latter provisions, there would have been no collision.

The jury after it had retired returned to the courtroom to ask the court for a clarification of designated instructions and the reading of the answers of a witness to certain questions. SDC 33.1325 provides that if during deliberation a jury desires additional instruction or information "they may require the officer to conduct them into Court. Upon their being brought into Court the information required must be given in the presence of, or after notice to the parties or counsel, and be taken down by the shorthand reporter". Counsel were notified of the return of the jury for additional instructions and information and a record was made of the proceedings as contemplated by the provisions referred to. Wittmeier v. Post, 78 S.D. 520, 105 N.W.2d 65, 97 A.L.R.2d 853.

■■ The record shows that the jury in response to its request for information regarding the testimony of a witness was permitted to hear a tape recording of the whole testimony of the witness and that counsel consented thereto. The necessity and extent of a supplemental or clarifying instruction rests in the sound discretion of the trial court. The instructions prop-

erly stated the law and were sufficiently specific. No error or abuse of discretion resulted from refusal of the court to give additional instructions.

The judgment is affirmed.

All the Judges concur.