660 F.2d 933
 William H. DUTY, Jr., Appellant,
and
Raymond International, Inc. and Peter Kiewitt Sons Company
and Tidewater Construction Corporation, a joint
venture d/b/a Raymond-Kiewitt-Tidewater,
Intervening Plaintiffs,
v.
EAST COAST TENDER SERVICE, INC., Appellee.
William H. DUTY, Jr., Plaintiff,
and
Raymond International, Inc. and Peter Kiewitt Sons Company
and Tidewater Construction Corporation, a Joint
Venture d/b/a Raymond-Kiewitt-Tidewater,
Appellants,
v.
EAST COAST TENDER SERVICE, INC., Appellee.
 Nos. 79-1540, 79-1541.
 United States Court of Appeals,
Fourth Circuit.
 Argued Aug. 25, 1980.
Decided Jan. 23, 1981.
On Rehearing In Banc Sept. 1, 1981.
 
 Paul D. Bekman, Baltimore, Md. (William H. Engelman, Harriett E. Cooperman, Kaplan, Heyman, Greenberg, Engelman & Belgrad, P. A., Baltimore, Md., on brief), for appellant in 79-1540; (James W. Bartlett, III, Francis J. Gorman, David R. Owen, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellant in 79-1541.
 George J. Koelzer, Red Bank, N. J. (Thomas D. Monte, Jr., Red Bank, N. J., George Beall, Baltimore, Md., Evans, Koelzer, Marriott, Osborne & Kreizman, Red Bank, N. J., Miles & Stockbridge, Baltimore, Md., on brief), for appellee.
 Before HAYNSWORTH, Chief Judge, and WINTER and MURNAGHAN, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 The case involves two mistakes, one by counsel for the plaintiff, one by the district judge. The mistakes relate to the language of a jury instruction. Are we to reverse for judicial error or should we affirm because of counsel's failure to draw pertinent authority to the court's attention which would have readily alerted him to his error, and permitted him to correct it? That is the question.[1]
 
 THE FACTS
 
 2
 Plaintiff William H. Duty, a carpenter foreman, was employed by the contractor in charge of construction of a liquified natural gas (LNG) port facility located on the navigable waters of the Chesapeake Bay, approximately one mile off the Western Shore of the Bay, near Cove Point, Maryland. Access to and from the job site was provided by East Coast Tender Service, Inc.
 
 
 3
 Among the vessels utilized by East Coast for such work crew ferrying purposes was the M/V Chandeleur. A certificate of inspection for the Chandeleur,[2] issued by the United States Coast Guard, required operation by a Coast Guard licensed ocean operator, with a deckhand as crew.
 
 
 4
 On April 26, 1976, the work crew engaged in constructing the LNG port facility of which the plaintiff was the foreman arrived at the LNG platform in the early morning hours. However, the weather deteriorated, leading to high waters and rough seas. East Coast sent the M/V Chandeleur to retrieve Duty's crew.
 
 
 5
 Robert Jarvis, who was in possession of a valid Coast Guard ocean operator's license, normally commanded the Chandeleur. Douglas Kohlhoff, who served as a deck hand, did not possess a valid Coast Guard ocean operator's license, motor vessel operator's license, or motorboat license. Robert Jarvis was on vacation during the week of April 26, 1976, and Kohlhoff was assigned to operate the Chandeleur for the pick-up on April 26, 1976 of Duty's crew.
 
 
 6
 Kohlhoff attempted a stern approach to the landing platform at the LNG facility. Upon reversal of the Chandeleur's engines, the stern of the vessel went under the loading platform, the pitch of the vessel in the rough seas causing it to strike the wooden loading platform, thereby separating from its fastenings a vertical ladder used by embarking and disembarking personnel. Duty, who was descending the vertical ladder in the course of preparing to board the Chandeleur was thrown and suffered the injuries which were the subject of the law suit.[3]
 
 
 7
 Duty received Longshoremen and Harbor Workers' Compensation from his employer. The present action against East Coast charging negligence then was filed alleging diversity of citizenship. The complaint was cast in traditional negligence terminology. It did, however, contain a statement that the "cause of action arises under the General Maritime Law of the United States as hereinafter more fully appears." The sole additional "maritime" allegations (1) alluded to operation of the Chandeleur "on navigable waters of the United States;" and (2) asserted "negligent failure of the Defendant to provide and maintain a safe and seaworthy vessel." The jury returned a general verdict in East Coast's favor.
 
 
 8
 The appeal concentrates on the role to be assigned operation of the Chandeleur by a person without the required Coast Guard ocean operator's license. Plaintiff presented a requested jury instruction to the effect that the absence of a licensed ocean operator for the Chandeleur constituted negligence per se.[4] The district judge, however, in denying the requested instruction, concluded that, inasmuch as the action arose on a diversity claim, without Duty's including a separate admiralty claim, state law should apply. Consequently, he instructed that the failure to provide a Coast Guard licensed operator was "evidence of negligence."[5] Such was the proper standard, if the negligence law of Maryland governed. New Amsterdam Casualty Co. v. Novick Transfer Co., 274 F.2d 916, 923 (4th Cir. 1960).[6] Plaintiff's counsel excepted to the failure to grant the "negligence per se " instruction laconically, inadequately, and indeed wrongly by simply stating:
 
 
 9
 Your Honor, we have one exception and that would be with respect to the failure to grant what has been marked as Plaintiff's request for Instruction No. 12. The basis for the exception is that it is the Plaintiff's position that, although in the complaint no specific reference was made to Rule (9)(h), that the Plaintiff has provided in the first cause of action a diversity claim based upon the savings to suiters (sic) clause and that it is a maritime claim, which would make the maritime law applicable. The incident occurred on navigable waters and it's our position that the maritime law would apply.
 
 
 10
 Accordingly, the Provenza and Venable cases which have been cited, along with the Kernan case, would require an instruction that a violation of the Coast Guard regulation would be negligence per se as opposed to being evidence of negligence and that if the jury were to find that as a proximate result of that violation, the Plaintiff was injured, then it is negligence in and of itself. That would be
 
 THE LAW
 
 11
 The status of the plaintiff as someone already compensated by his employer, under the Longshoremen's and Harbor Workers' Compensation Act, was manifest. A companion case had been consolidated under which the employer asserted a lien for reimbursement of LHWCA benefits paid against any recovery by the plaintiff in the third-party negligence action against the owner of the vessel.
 
 
 12
 Prior to amendment in 1972 of the LHWCA, it was manifest that suit under that Act was maritime, both jurisdictionally, on the one hand, and substantively, or respecting the rules governing liability, on the other.[7] In any case in which negligence was pertinent, if there was any difference between maritime negligence law and land-based negligence law, maritime law prevailed.[8] However, in 1972 substantial amendments were made, and, since the accident in Duty's case occurred in 1976, the 1972 amendments to the LHWCA unquestionably applied.
 
 
 13
 Following the 1972 amendments, 33 U.S.C. § 905(b) provided recovery for "negligence of a vessel." The theretofore existing right to sue for unseaworthiness was abrogated.[9] Recovery was described as exclusive of all other remedies against the vessel, with an exception not here pertinent for remedies otherwise provided in the LHWCA. The legislative history makes clear the purpose of the 1972 amendments:
 
 
 14
 to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as "unseaworthiness", "non-delegable duty", or the like.... (T)he vessel shall not be liable ... unless it is proven to have acted or have failed to act in a negligent manner such as would render a land based third party in non-maritime pursuits liable under similar circumstances.
 
 
 15
 H.R.Rep.No.92-1441, 92d Cong., 2d Sess. (1972), 3 U.S.Code Cong. & Admin.News, pp. 4698, 4703-4704 (1972).[10]
 
 
 16
 By the 1972 amendment, a LHWCA cause of action under § 905(b), while clearly remaining "maritime" in a jurisdictional sense since the accident occurred on navigable waters,[11] was divested of all special maritime claim characteristics. Anuszewski v. Dynamic Mariners Corp., Panama, 540 F.2d 757, 759 (4th Cir. 1976), cert. denied, 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977) ("It is equally clear ... that while longshoremen retain the right to recover damages against a vessel, in such an action they occupy the same position as their land-based counterparts."); Riddle v. Exxon Transportation Co., 563 F.2d 1103, 1110 (4th Cir. 1977) ("the Amendments ... declared that ... liability ... was governed by 'land-based' negligence principles and not by 'maritime negligence concepts.' ").
 
 
 17
 A fundamental change, therefore, was brought about by the 1972 amendments. Formerly maritime for all purposes, a § 905(b) action now had a dual nature: jurisdictionally maritime, but substantively land-based. Unseaworthiness was no more, and negligence as defined for certain maritime purposes, such as the non-delegable duty to provide a safe place to work, was also gone. Negligence, henceforth, was to be defined solely on land-based, common law principles, divorced from all maritime "negligence" concepts if, and to the extent there was a variance.
 
 
 18
 Practically, that sweeping change rendered cases involving pre-1972 accidents of little use in ascertaining a negligence rule which should apply in a case arising under the amended statute. Except in the rarest instance, suit before 1972 was brought on unseaworthiness as well as negligence grounds, and anything written about negligence was apt to have been colored by the presence of that or a related maritime tort. See Giacona v. Capricorn Shipping Co., 394 F.Supp. 1189, 1191 (S.D.Tex.1975):
 
 
 19
 The longshoreman's maritime negligence cause of action was recognized long before the Longshoremen's Act was passed and existed quite independent of that Act.... As a practical matter, however, between the Sieracki[12] decision and the 1972 amendments any in-depth treatment of this doctrine in the longshoreman's case was unnecessary because the broader unseaworthiness doctrine was so much easier to prove.
 
 
 20
 Cf. Arthur v. Flota Mercante Gran Centro Americana, S.A., 487 F.2d 561, 563 (5th Cir. 1973):
 
 
 21
 The litigants cite us to no case and our independent research reveals none, in which the regulations were applied when the sole basis for recovery was negligence.
 
 
 22
 To the limited extent that pre-1972 cases were discussing true negligence, unalloyed with special maritime concepts, of course, they remain persuasive despite the fact that the claims involved were maritime in character. See Bess v. Agromar Line, 518 F.2d 738, 740-41 n.5 (4th Cir. 1975) ("To the extent that Boleski discussed the liability of the shipowner under negligence principles it remains pertinent despite the 1972 Amendments to the Act."). Cf. Marshall v. Isthmian Lines, Inc., 334 F.2d 131 (5th Cir. 1964).
 
 
 23
 Nevertheless, to determine what, as between "evidence of negligence" and "negligence per se," constitutes post-1972 negligence law, we must write on an unencumbered slate. The cases which have been cited to us in great numbers by the plaintiff are largely irrelevant because they have dealt with identification and application of substantive rules of maritime tort law to which any discussion of negligence law was subordinated.
 
 
 24
 Thus operational negligence has been subsumed under the doctrine of unseaworthiness, and a trial court's instructions should no longer attempt to distinguish between the two.... (P) That it is the shipowner's duty to furnish all seamen and longshoremen a safe place to work ... (is) uniformly acknowledged.... This duty, absolute and nondelegable, creates a 'species of liability without fault * * *. Derived from and shaped to meet the hazards which performing the services imposes, the liability is neither limited by conceptions of negligence nor contractual in character * * * ....'
 
 
 25
 Venable v. A/S Det Forenede Dampskibsselskab, 399 F.2d 347, 351-52 (4th Cir. 1968), quoting Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94-95, 66 S.Ct. 872, 877-878, 90 L.Ed. 1099 (1946).
 
 
 26
 As a source of pertinent post-1972 negligence law, we are first presented with the question of whether the land-based law should be that of the state in which the navigable waters are located on which the accident occurred. The legislative history is unambiguous that it is a uniform federal law, not state law, to which we must turn:
 
 
 27
 Finally, the Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law.
 
 
 28
 H.R.Rep.No.92-1441, 92d Cong., 2d Sess. (1972), 3 U.S.Code Cong. & Admin.News, p. 4705 (1972).
 
 
 29
 In short, the objective has been to avoid a situation in which a plaintiff would have a viable cause of action in Portland, Maine although, under exactly identical factual circumstances, he would be unable to recover in Portland, Oregon because of differences in the laws of the two states. That is not to say that the state law might not constitute persuasive authority as to what the federal law should be. However, applying the Maryland law simply because it was state law in this case was wrong. However, inasmuch as federal law and state law might very well coincide, that error would not, in and of itself, be grounds for reversal.
 
 
 30
 We go further, and assume, for purposes of the case, that federal land-based law would express itself in "negligence per se" terms and not in accordance with the Maryland test of "evidence of negligence."
 
 CONDUCT OF PLAINTIFF'S COUNSEL
 
 31
 An initial reaction then presents itself. Plaintiff's counsel requested the proper instruction, and it was denied. Why then is he not entitled to a reversal and a new trial? Yet it is not enough simply to request an instruction. One must also object, if it is not given, "stating distinctly the matter to which he objects and the grounds of his objection." Fed.R.Civ.P. 51.
 
 
 32
 The insufficiencies and errors of plaintiff's counsel in the advocacy over the jury instruction should by now be evident. He cited only pre-1972 cases.[13] He merely contended that the fact that maritime law applied entitled him to the requested instruction.
 
 
 33
 When one is discussing the terminology of a jury instruction one is concerned with the substantive law to be applied, not with jurisdictional considerations. So, in the only way in which the remark could have been pertinent when given, properly the plaintiff should have acknowledged that his claim was not substantively maritime, but rather was one resting on principles of land-based negligence.
 
 
 34
 Inasmuch as the plaintiff never moved from his untenable position that maritime law, not land-based law, substantively controlled, he at no time brought to the district judge's attention any reasons why, assuming land-based law was properly controlling, the "negligence per se " approach was still the proper one, or why the "evidence of negligence" instruction would be wrong. He allowed that point to go by default.[14] The defendant is correct in its Brief when it asserts that the plaintiff never suggested or implied in his Opening Brief that, as a land-based concept, the district judge erred in accepting "evidence of negligence" and rejecting "negligence per se."[15]
 
 
 35
 While not directly pertinent, it may be surmised that, in general, the meticulousness or strict accuracy as to legal principles of plaintiff's counsel had become somewhat tarnished in the eyes of the district judge. Hence a proposition here advanced for specious and fallacious grounds got short shrift, even though it was, in point of jurisprudence, correct.
 
 
 36
 1. A judge might well be tempted to take a lawyer less seriously where, well after 1972, he includes, in a complaint prepared on behalf of someone covered by LHWCA and suing the ship on a third-party negligence basis, a claim for "negligent failure of the Defendant to provide a safe and seaworthy vessel."
 
 
 37
 2. Even less professional had been the allegation in the complaint that the "cause of action arises under the General Maritime Law of the United States...." Plaintiff's counsel described it as a precaution, so that no one would conclude that, by pleading a diversity action type tort claim, and praying a jury trial, he was waiving his right to proceed under maritime law, specifically 33 U.S.C. § 905(b).
 
 
 38
 In the first place, the "precaution" was superfluous. After the holdings in Kermarec,[16] the pleading that the injury occurred through operation of a vessel "on navigable waters" fully sufficed. The "saving-to-suitors" clause of 28 U.S.C. § 1333 made plaintiff secure on that point. Cf. Pryor v. American President Lines, 520 F.2d 974 (4th Cir. 1975), cert. denied, 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644 (1976).
 
 
 39
 Second, the so-called precaution was actually headed 180 degrees away from the direction in which plaintiff's counsel claims to have been steering. He cites Harrison v. Flota Mercante Grancolumbiana, S.A., 577 F.2d 968 (5th Cir. 1978) and a long quotation of the Advisory Committee to the Rules Committee concerning the admiralty unification amendments to the Federal Rules of Civil Procedure. 39 F.R.D. 69, 75-76 (1965).
 
 
 40
 Both the Harrison opinion and the Advisory Committee Note, however, make altogether clear that "a simple statement in his (plaintiff's) pleadings to the effect that the claim is an admiralty or maritime claim" would serve the purpose of making the case a true one in admiralty, and thereby eliminate any possibility of trial by jury. Some plaintiffs desire to proceed by court trial as admiralty requires, and the kind of short statement employed by plaintiff in his complaint is used to preserve the option of no jury trial. Plaintiff would seek to turn things upside-down and make the short statement a vehicle for protecting the election to proceed before a jury. Plaintiff was perhaps fortunate not to have lost trial by jury altogether. The jury prayer, on the one hand, and the short statement that the action arose under General Maritime Law, on the other, were inherently contradictory.
 
 
 41
 This, then, is a situation in which "maritime," which we have already seen in two guises, "jurisdictional" and "substantive," takes on a third modality of "procedural." The difficulties of plaintiff's counsel appear to have derived from his inability to distinguish, or to explore the significances of, the three different meanings of "maritime."CONSEQUENCES OF PLAINTIFF'S COUNSEL'S FAILURE TO STATE
 
 TO THE DISTRICT JUDGE SOUND REASONS FOR HIS
 PROFFERED INSTRUCTION
 
 42
 It thus becomes incumbent on us to parse Fed.R.Civ.P. 51 against counsel's behavior to determine whether or not he preserved an objection for appeal. Plaintiff's counsel here did object to the failure to give his requested instruction on "negligence per se" lines and to the giving, instead, of an "evidence of negligence" instruction. He stated distinctly the matter to which he objected. He also stated the grounds of his objection, albeit they were faulty and inadequate in law. Perhaps in a purely linguistic sense he has complied with Rule 51.
 
 
 43
 However, the rule clearly contemplates that, to preserve the objection, he must have raised an adequate ground at the time. He was not permitted to state a faulty reason, and then, after the jury had retired, and the opportunity to correct any erroneous aspect of the instructions not called to the district judge's attention was gone, to raise additional reasons. 9 Wright and Miller, Federal Practice and Procedure, § 2554:
 
 
 44
 The grounds must be stated with sufficient clarity that the trial judge may see what they are and follow them if well taken.... A party may not state one ground when objecting to an instruction and attempt to rely on a different ground for the objection on appeal or on a motion for a new trial.[17]
 
 
 45
 In Tropea v. Shell Oil Co., 307 F.2d 757, 769 (2d Cir. 1962), it was held:
 
 
 46
 Perhaps the judge should not have added to his charge that Tropea did not 'assume the hazards from someone else's negligent acts.' But this was not reversible error because Maripet's objection to the charge, when it was given, did not distinctly apprise the trial judge, as was required by Rule 51 of the Federal Rules of Civil Procedure ..., in what way this part of his charge might have been erroneous.
 
 
 47
 See Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943):
 
 
 48
 In fairness to the trial court and to the parties, objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error. Where a party might have obtained the correct charge by specifically calling the attention of the trial court to the error, and where part of the charge was correct, he may not through a general exception obtain a new trial.[18]
 
 
 49
 There only remains for consideration the question whether there was "plain error" requiring a new trial even in the absence of an adequate objection under Rule 51. Appleyard v. Transamerican Press, Inc., 539 F.2d 1026, 1031 (4th Cir. 1976) (Butzner, J., concurring), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977):
 
 
 50
 Most circuits have said that an appellate court may reverse for plain error where necessary to prevent a miscarriage of justice despite the defendant's failure to comply with Rule 51.
 
 
 51
 Ramsey v. Travelers Ins. Co., 317 F.2d 300, 302 (4th Cir. 1963). In both those cases, while recognizing the principle, the court did not perceive a miscarriage of justice, and so did not apply the plain error exception to Rule 51. However, in Edwards v. Mayes, 385 F.2d 369, 373 (4th Cir. 1967), where the applicable state law made it prejudicial error to fail to instruct that excessive speed was "negligence per se," the Court applied the plain error rule.
 
 
 52
 However, that case does not compel a reversal for failure to give a "negligence per se" instruction in Duty's case, assuming that it would constitute the correct exposition of the law. In Edwards, the issue was core-central to the litigation. Duty's case, on the other hand, involved a variety of issues on which the jury may well have rested its decision. There was, for example, a substantial basis for a finding that the accident never, in fact, occurred. While there is a significant difference between "evidence of negligence" and "negligence per se" which would have required that we resolve the issue between "negligence per se" and "evidence of negligence," and, therefore, perhaps reverse had plaintiff's counsel complied with Rule 51, we recognize that there is a substantial overlap of the two concepts, so that Duty did not suffer a miscarriage of justice in going to the jury on "evidence of negligence" when his counsel neglected to make the objection necessary to preserve the right to a "negligence per se" instruction.
 
 
 53
 The case of Barger v. Mayor & City Council of Baltimore, 616 F.2d 730, 733-34 (4th Cir. 1980) (appeal pending) is instructive. A negligence per se instruction which was given did not accurately state the law. The failure to comply with Rule 51 precluded the appellant. The court concluded that there was no "miscarriage of justice," and that "justice will not be disserved by allowing the verdicts in this case to remain undisturbed."
 
 
 54
 Accordingly, we affirm.
 
 
 55
 AFFIRMED.
 
 WINTER, Circuit Judge, dissenting:
 
 56
 Because I am persuaded that notwithstanding the 1972 amendments to the LHWCA a cause of action thereunder is still a maritime action, I am led to conclude that counsel complied with F.R.Civ.P. 51 and preserved the question of the correctness of the instruction for review. I think also that the district court was in error in giving the "evidence of negligence" instruction rather than the requested "negligence per se" instruction. As I analyze the majority's opinion, it avoids this result by elevating what is concededly only a semantic difference with plaintiff's counsel to a matter of substance and by misreading the purpose and legislative intent of the 1972 amendments. It seems to me also that the majority falls into error by attempting to create a dichotomy between compliance with Rule 51 and the correct instruction to be given. As I shall attempt to show, these issues are closely intertwined, if not part and parcel of a unitary concept. One cannot be decided without the other. Because I think that both should be decided in plaintiff's favor, I respectfully dissent.
 
 I.
 
 57
 I begin by discussing what is a proper negligence instruction following the 1972 amendments in essence, what the 1972 amendments did to existing maritime negligence law.
 
 
 58
 As the majority shows, the purpose and effect of the 1972 amendments was to abolish a longshoreman's cause of action against a ship on the theory of unseaworthiness, while preserving his cause of action for negligence. It is equally clear that this cause of action for negligence was to be administered on the basis of uniform federal law, and, although the test for negligence should coincide with the test employed in non-maritime pursuits, that the uniform law was maritime in nature:
 
 
 59
 Finally, the Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law. In that connection, the Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury. Also, the Committee intends that the admiralty rule which precludes the defense of "assumption of risk" in an action by an injured employee shall also be applicable.
 
 
 60
 H.R.Rep.No. 92-1441, 92d Cong., 2d Sess. (1972), reprinted in (1972) U.S.Code Cong. & Ad.News, p. 4705.
 
 
 61
 I disagree with the majority that the 1972 amendments created an action jurisdictionally maritime but substantively land-based. As the quotation from the committee report set forth above clearly demonstrates, the admiralty concepts of comparative negligence and preclusion of the defense of assumption of the risk were not dislodged in any case where contributory negligence was a factor. One need only read Crowell v. Benson, 285 U.S. 22, 39, 41-2, 52 S.Ct. 285, 287, 288-89, 76 L.Ed. 598 (1932), to conclude inescapably that the LHWCA was enacted in the exercise of the power of Congress to alter and revise the maritime law. A longshoreman's right to sue under 33 U.S.C. § 905(b) for the negligence of a vessel is a maritime cause of action. While it is correct to say that, by the 1972 amendments, the maritime rule by which his right to recover is to be judged should conform to land-based negligence law, except where there is an issue of contributory negligence, it is most assuredly incorrect to conclude that the 1972 amendments converted a maritime rule into a land-based rule.
 
 
 62
 If a uniform federal law as to the effect of the violation of a safety regulation is to be applied, Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958), provides a helpful starting point in determining such a rule. That case held that under the Federal Employers' Liability Act, as extended to seamen by the Jones Act, not only is the violation of a statutory duty where the injury is one which the statute was designed to prevent negligence per se, but "a violation (of the statute) creates liability ... if the resulting defect or insufficiency in equipment contributes in fact to the death or injury in suit, without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." 355 U.S. at 433, 78 S.Ct. at 398. Of course, Kernan established the quoted rule of liability only for wrongful death actions under the Jones Act. In doing so, as the majority points out, it refused to apply "the refined distinctions necessary in common-law tort doctrine." 355 U.S. at 438, 78 S.Ct. at 401. However, even in finding common law negligence principles inapplicable, the Kernan opinion defines the general common-law rule "that violation of a statutory duty creates liability only when the statute was intended to protect those in the position of the plaintiff from the type of injury (which) in fact occurred." Id. Kernan, it seems to me, not only provides significant aid in determining the general maritime negligence rule applicable under LHWCA, but it obviously was not displaced by the 1972 amendments,[1] as were Venable v. A/S Det Forenede Dampskibsselskab, 399 F.2d 347 (4 Cir. 1968), and Provenza v. American Export Lines, Inc., 324 F.2d 660 (4 Cir. 1963).
 
 
 63
 Should there be doubt that Kernan offers the correct model for deciding that "negligence per se", and not "evidence of negligence", is the proper test, that doubt is put to rest by Restatement (Second) of Torts § 286, which states that a court "may adopt as the standard of conduct of a reasonable man the requirements of ... an administrative regulation whose purpose is found to be exclusively or in part ... to protect a class of persons which includes the one whose interest is invaded ...." Plaintiff here was within the protected class of persons, and the license requirement was designed to protect the particular interest invaded against the very harm inflicted. In concluding that this is a case of negligence per se, the Restatement is in accord with the weight of authority, although not in accord with the Maryland law applied by the district court. See Prosser, Torts (4 Ed. 1971) p. 200-01.
 
 II.
 
 64
 Having thus shown that plaintiff was entitled to an instruction that defendant's failure to employ a person with the required Coast Guard license to pilot the M/V Chandeleur on the date of the accident was negligence per se, I turn to the question of whether the issue has been preserved for review. In short, was there compliance with F.R.Civ.P. 51? I would conclude that there was.
 
 
 65
 Plaintiff's request for instruction No. 12 was precisely what plaintiff was entitled to receive. It would have submitted to the jury only the issue of probable cause. The instruction was refused, but it is crystal-clear that it was refused because the district court was of the view that the court was solely exercising diversity jurisdiction, that the law of Maryland controlled and that the Maryland rule was that violation of a regulation was, at most, evidence of negligence but not negligence per se.[2] Indeed, the district court even went so far as to intimate that were the case under the admiralty jurisdiction of the court, it would have instructed the jury that violation of the regulation was negligence per se.[3] But the district court was firm in its view that plaintiff had invoked only diversity jurisdiction and not maritime jurisdiction, notwithstanding that the complaint alleged that "(t)his cause of action arises under the General Maritime Law of the United States ...," and defendant's answer admitted this allegation.
 
 
 66
 Plaintiff excepted to the failure to give his requested instruction, and the majority has set forth the text of his statement. Summarized, his position was that he was pursuing a maritime claim under diversity jurisdiction under the saving to suitors clause,[4] but that his claim was a maritime one which made maritime law applicable. Citing Provenza, Venable and Kernan, supra, he repeated that he was entitled to an instruction that violation of the regulation "would be negligence per se as opposed to being evidence of negligence ...." The district court commented on the exception, saying that "(i)t was not only that you did not mention 9(h) (F.R.Civ.P.)[5] but that it was not even pleaded as a separate cause of action. I have no doubt that if properly pleaded and properly referred to in the pretrial order, you could have pinned a maritime claim to a diversity claim."
 
 
 67
 It seems quite evident to me that plaintiff's counsel fully complied with F.R.Civ.P. 51 by "stating distinctly the matter to which he objects and the grounds of his objection." He identified the erroneous instruction to which he objected, he identified the correct instruction which he should have been given, and he correctly identified for the district court the source of its error. In asserting that plaintiff's case was a maritime case and that maritime law, not the Maryland law of negligence, was applicable, he was completely correct. I think that he was correct also in identifying Kernan as a source of the federal law even though his references to Provenza and Venable were inapposite. But I do not think that even the majority would hold that a partial reference to inapposite authority would doom the effectiveness of an objection under Rule 51. Since the district court's basic error was in treating the case solely as one under diversity jurisdiction where, under familiar Erie principles, the law of Maryland applied, and failing to recognize that under the saving-to-suitors clause a maritime cause of action could be pursued under diversity jurisdiction, it manifestly would have availed counsel nothing to elaborate on the authorities which would indicate with what land-based negligence rules a maritime cause of action under § 905(b) should be made to comport. In any event, such an elaboration was unnecessary since the district court indicated that, had it recognized plaintiff's cause of action as maritime in nature, it would have granted the requested instruction. Thus, the majority's complaint that plaintiff's counsel "merely contended that the fact that maritime law applied entitled him to the requested instruction," even if entirely accurate as a factual matter, is wholly inapposite.
 
 
 68
 There remains for comment only those authorities on which the majority relies for its conclusion that there was noncompliance with Rule 51. The text, 9 Wright and Miller, Federal Practice and Procedure, § 2554, says, of course, what the majority quotes. Significantly, however, it adds:
 
 
 69
 Rule 51 is not top-heavy with technical excuses for overlooking trial errors. No particular formality is required so long as it is clear that the trial judge was informed of possible errors and was given an opportunity to correct them.
 
 
 70
 The cases on which the majority relies deal not with counsel's reliance on a faulty theory of law,[6] but with his failure to identify specifically the particular portion of an instruction to which he objects. In Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), plaintiff relied on several causes of action, and the trial judge gave a general instruction regarding burdens of proof. The defendant objected generally without specifying how the burdens should be allocated with regard to specific causes of action. The Supreme Court found the instructions erroneous as to a particular cause of action, but held defendant's "general exception" insufficient. Likewise in Tropea v. Shell Oil Co., 307 F.2d 757, 769 (2 Cir. 1962), the Second Circuit found one phrase in an instruction erroneous, but found no reversible error because counsel never told the trial judge in what way the specific passage was wrong. Finally, in Appleyard v. Transamerican Press, Inc., 539 F.2d 1026, 1031 (4 Cir. 1976) (Butzner, J., concurring), the defendant objected only to the submission of a punitive damages issue to the jury. In his concurrence, Judge Butzner noted that this objection was insufficient to preserve the question of what standard should be applied in determining whether punitive damages should be assessed.
 
 
 71
 These cases, in short, involve overly general objections or objections addressed to the wrong issue. In this case, plaintiff's objection addressed the same issue he challenges on appeal: the application of Maryland law. His failure, if any, was only in setting out the theory now espoused by the majority underlying the proper choice of law.[7] The language of a Tenth Circuit case is directly in point:
 
 
 72
 A formal objection need not include detail of supporting argument in order to fully apprise the court of the grounds of the objection.
 
 
 73
 Darter v. Greiner, 301 F.2d 772, 775 (10 Cir. 1962).
 
 
 74
 I repeat that I think that plaintiff met the requirements of Rule 51. To my mind, only by insistence on articulation with the nicety and precision of language in an appellate opinion, may one conclude otherwise.
 
 ON REHEARING IN BANC
 PER CURIAM:
 
 75
 William H. Duty, Jr. appeals from a judgment entered on a jury's verdict for defendants in his suit for personal injuries sustained while he was employed as a marine construction carpenter foreman, brought under § 5(b) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b), and under the district court's diversity jurisdiction. He claims error in the district court's instruction to the jury that proof that a motor vessel, which collided with a loading dock and caused him to be thrown from a ladder, was operated by an unlicensed operator in violation of Coast Guard rules was only evidence of negligence and not negligence per se, on the part of the owner.
 
 
 76
 The case was originally heard by a panel of this court which affirmed the district court's judgment in a split decision. Duty v. East Coast Tender Service, Inc., 660 F.2d 933 (4 Cir. 1981). Judge Murnaghan, joined by Chief Judge Haynsworth, decided that Duty had failed to fulfill the requirements of Rule 51, F.R.Civ.P. in objecting to the district court's jury instruction. The panel therefore affirmed without reaching the merits of Duty's claim. In dissent, Judge Winter expressed the view both that the objection was preserved pursuant to Rule 51 and that the instruction was legally erroneous.
 
 
 77
 Because of the importance of the question as to the meaning and scope of Rule 51 as well as to the legal standard to be applied in an action under § 5(b) of LHWCA since the 1972 amendments when there is evidence of a violation of a licensing regulation, we granted rehearing in banc.* We reverse and grant a new trial.
 
 
 78
 As we have indicated the appeal presents two issues: (1) was there compliance with Rule 51 with regard to the district court's contested instruction to the jury; and if so, (2) what was the correct instruction to be given?
 
 
 79
 As to the first issue, Chief Judge Winter, Judge Butzner, Judge Widener, Judge Hall, Judge Phillips, Judge Sprouse and Judge Ervin agree that there was compliance with Rule 51 and that the contested substantive issue was preserved for appellate review for the reasons expressed in Judge Winter's dissenting panel opinion. Judge Russell expresses no view on this issue because he is of the opinion that the challenged instruction was legally correct and hence he need not decide the issue of preservation under Rule 51. For the reasons set forth in his majority panel opinion, Judge Murnaghan remains of the view that there was non-compliance with Rule 51 and that we should not reach the substantive issue.
 
 
 80
 As to the substantive issue, Chief Judge Winter, Judge Butzner, Judge Phillips, Judge Murnaghan, Judge Sprouse and Judge Ervin agree that, for the reasons set forth in Judge Winter's dissenting panel opinion, the instruction given was legally incorrect. The jury should have been instructed that the operation of the motor vessel without a licensed operator in violation of a regulation of the Coast Guard was negligence per se, leaving for the jury to decide as to liability only whether that negligence was a proximate cause of the collision resulting in plaintiff's injuries.** Judge Russell, Judge Widener and Judge Hall are of the view that violation of the regulation was only evidence of negligence, not negligence per se, and that the jury was correctly instructed. They would affirm the judgment of the district court.
 
 
 81
 We need say little more except to take note of Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), decided subsequent to the panel's decision of the instant case. That case, as is the instant case, was a suit by a longshoreman (here a harbor worker) under LHWCA for personal injuries allegedly sustained as a result of the negligence of a vessel. In deciding that a shipowner may be liable for negligence when he knows or should have known of a hidden danger but failed to warn the stevedore of it, the Court lent strong support to the view that a negligence action under § 905(b) is more properly called "maritime" than "land-based."
 
 
 82
 Significantly, in defining the vessel's duty to longshoremen to exercise "due care under the circumstances," the Court referred not to the Restatement or to other land-based sources but to a pre-1972 LHWCA case which dealt with negligence. See 101 S.Ct. at 1620, citing Marine Terminals v. Burnside Shipping Co., 394 U.S. 404, 415, 89 S.Ct. 1144, 1150, 22 L.Ed.2d 371 (1969). The Court was even more specific in describing the sources of negligence law under § 905(b):
 
 
 83
 Because the legislative history suggests that the shipowner's liability is to be judged by land-based standards, ... it is urged that the District Court properly turned to and applied §§ 343 and 343A of the Restatement (Second) of Torts. But the legislative history does not refer to the Restatement and also states that land-based principles of assumption of risk and contributory negligence are not to be applied in § 905(b) cases. This strongly suggests, as Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959) (a pre-1972 maritime negligence case), indicated, that maritime negligence actions are not necessarily to be governed by principles applicable in nonmaritime contexts. Furthermore, since the lower courts are not only in disagreement as to the applicability of §§ 343 and 343A but also as to their import and meaning when applied in the maritime context, those sections, while not irrelevant, do not furnish sure guidelines in cases such as this.
 
 
 84
 101 S.Ct. at 1622-23 n.14. If there was any doubt before Scindia that a negligence action under § 905(b) might properly be called "maritime," it is erased by this footnote.
 
 
 85
 Accordingly, with Judge Russell in full dissent, and with Judge Widener, Judge Hall and Judge Murnaghan in partial dissent, we reverse the judgment of the district court and grant plaintiff a new trial.
 
 
 86
 REVERSED AND REMANDED.
 
 K. K. HALL, Circuit Judge, dissenting:
 
 87
 The district judge understood the issue before him, ruled correctly and should be affirmed. I dissent.
 
 
 88
 In opining that the negligence per se rule should be, and is, the federal rule, Chief Judge Winter in his dissenting panel opinion has led the majority of this court down the garden path by including licensing statutes within the common-law rule creating liability for violation of a statutory duty. The majority leans heavily on Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958), where an accident occurred because of the violation of a regulation concerning the proper positioning of a navigational light. The per curiam opinion also prepared by Chief Judge Winter does no better by citing Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), which involves a known hidden danger and failure to warn. Neither of these cases concerns a licensing statute.
 
 
 89
 The licensing statutes are an exception to the rule relied upon by the majority opinion. The majority cites Prosser in support of its rule. At 30. However, Prosser specifically recognizes the licensing exception, stating:
 
 
 90
 Most licensing statutes, such as those applicable to automobile drivers or physicians, have been construed as intended only for the protection of the public against injury at the hands of incompetents, and to create no liability where the actor is in fact competent but unlicensed. (emphasis added). Prosser, Torts (4 ed. 1971) p. 196.
 
 
 91
 Indeed, the "weight of authority" has adopted the licensing exception to the general rule that violation of a statute is negligence per se.[1] In fact, a number of the jurisdictions require an instruction that, absent a showing of incompetence, the jury should not even consider lack of a license in its determination of negligence.[2]
 
 
 92
 I believe this to be the better rule and the one which we should follow in this case. The liability of the vessel owner must be determined from the acts of the seaman as he brought the vessel to the pier. The record demonstrates that the helmsman of the Chandeleur was an experienced, competent seaman who was pressed into service at the last minute. The fact that he did not have a license in his pocket had nothing to do with the accident.[3] As it stands, the district court went far beyond the requirement of most jurisdictions by instructing the jury that the lack of a license is evidence of negligence.[4]
 
 
 93
 Accordingly, I would affirm.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 94
 My dissent derives from a very simple proposition. As the distinguished Professor Moore has pointed out, the provisions of the Federal Rules of Civil Procedure "are to be observed by all." 2 Moore's Federal Practice P 1.13(1). By the same token all of "the provisions of the rules are to be observed."
 
 
 95
 Plaintiff requested a jury instruction in terms of "negligence per se." A majority of the en banc court, including myself, agree that it would have been the accurate statement of the law, rather than the charge of "evidence of negligence," which the district judge gave.
 
 
 96
 Yet the reasons advanced by the lawyer for the plaintiff, at the time of discussion between court and counsel of jury instructions, were inadequate, unhelpful, and, indeed, misleading. The unadorned statement, neither amplified nor explained, was made that maritime law prevails.[1] Accepting that statement to be true and giving no weight to the established rule that the applicable maritime law has opted to borrow its substance in cases of the kind with which we here deal from land-based negligence, the fact remains that classification of the law as "maritime" does nothing to resolve the question of whether a rule of negligence per se or a rule of evidence of negligence is the applicable one.[2]
 
 
 97
 The very fact that of my colleagues three (Judge Russell, Judge Widener, and Judge Hall), together with our distinguished companion, Judge Haynsworth, whose recent acceptance of senior status rendered him ineligible to vote in the en banc rehearing, were convinced that, under maritime law, the facts of the present case called for an evidence of negligence instruction rather than an instruction of negligence per se demonstrates convincingly that the answer in no way depends on the irrelevance of classification of the law as maritime.
 
 
 98
 It is to be remembered that, prior to the 1972 amendments in the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), the true maritime negligence doctrine rarely had occasion to surface in situations like the one here confronting us because a plaintiff covered by LHWCA and suing the vessel on a third-party negligence basis was able to proceed on the liability-without-fault approach of unseaworthiness. Negligence for maritime law purposes was a rarity.
 
 
 99
 As it happens, though it is just as irrelevant looked at from the opposite side, the few cases which were decided under the maritime law of negligence made the standard of negligence one of evidence of negligence and not one of negligence per se. Marshall v. Isthmian Lines, Inc., 334 F.2d 131, 136, 138 (5th Cir. 1964) (with respect to Coast Guard regulations, the Court ruled that noncompliance was not negligence per se. "But this determination that negligence per se does not here apply does not mean that the regulations have no relevance at all in a negligence action." The judge's advice to the jury "would include, as a minimum, a positive declaration that the regulations do prescribe a standard of care, and, since this is not a per se situation, the jury could take the standard of care into account in determining whether this Shipowner in these circumstances was guilty of negligence.").[3]
 
 
 100
 Marshall made it perfectly clear that the choice between the two negligence standards should be made on a case-by-case basis. Id. at 136:
 
 
 101
 It is perfectly obvious, therefore, that we cannot, we do not, undertake to categorize any of the regulations other than this one on cotton bales (46 C.F.R. § 146.27-25(b)) as per se or non-per se.
 
 
 102
 Beyond blurting out the term "maritime" in circumstances where it afforded no enlightenment whatever, the plaintiff simply cited three cases. Two of them were third party negligence actions by persons covered by LHWCA instituted prior to 1972, i. e., when unseaworthiness was still an available grounds for recovery rendering negligence irrelevant. Chief Judge Winter himself in his dissenting panel opinion recognized the cases as "inapposite."
 
 
 103
 The third case cited, Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958), did not concern a plaintiff like Duty, who first had recovered workmen's compensation under the LHWCA, and subsequently was reaching out for an additional recovery through a third party action against the owner of the vessel. Rather, it was brought by the widow of a seaman for whom no workmen's compensation remedy was provided by law. The only available recovery was for negligence. However, the negligence was not of the usual "land-based" variety. The Jones Act, 46 U.S.C. § 688,[4] had adopted by reference the Federal Employers' Liability Act ("FELA"). The FELA, in turn, operated in circumstances where there was no workmen's compensation to insure relief for job-related injuries irrespective of fault. To avoid the spectres of employees going altogether uncompensated, although they were the inevitable victims of the industrialization of society, the FELA has been, and, at the time of decision in Kernan, had been construed to the point where it was virtually equivalent to a workmen's compensation act setting minimal requirements of proof in order to establish "negligence" which would not have sufficed under otherwise generally applicable negligence standards. As the Supreme Court pointed out in Kernan, supra, 355 U.S. at 431-32, 78 S.Ct. at 397-98:
 
 
 104
 The question for our decision is whether, in the absence of any showing of negligence, the Jones Act which in terms incorporates the provisions of the FELA permits recovery for the death of a seaman resulting from a violation of a statutory duty. We hold that it does.
 
 
 105
 ... Therefore, as industry and commerce became sufficiently strong to bear the burden, the law, the reflection of an evolving public policy, came to favor compensation of employees and their dependents for the losses occasioned by the inevitable deaths and injuries of industrial employment, thus shifting to industry the "human overhead" of doing business. For most industries this change has been embodied in Workmen's Compensation Acts. In the railroad and shipping industries, however, the FELA and Jones Act provide the framework for determining liability for industrial accidents.
 
 
 106
 (Emphasis supplied.)
 
 
 107
 Consequently, the Jones Act case of Kernan was altogether "inapposite," too, as authority for the situation in which someone had already recovered workmen's compensation under the LHWCA and was now seeking a third party separate, distinct, and additional negligence recovery, not under the Jones Act and the FELA, but rather on the theory of land-based negligence divorced from any maritime concept encrustations.
 
 
 108
 Therefore, no adequate grounds for the objection to the "evidence of negligence" instruction were given. Substantially, the "reasons" were no reasons at all. There are, of course, readily available sources, the Restatement Torts, Second, § 286, cited by Judge Winter in his panel dissent, in particular, which could have been cited as adequate "grounds of his objection."
 
 
 109
 Federal Rule of Civil Procedure 51 precludes a party's assigning as error on appeal the giving or the failure to give an instruction unless he not only "objects thereto before the jury retires to consider its verdict," but also, in so objecting, states "distinctly the matter to which he objects and the grounds of his objection." (Emphasis supplied.) With respect, the decision of the en banc majority obliterates from F.R.Civ.P. 51 the phrase "and the grounds of his objection." See authorities gathered in my panel opinion, 660 F.2d 933, 941 (4th Cir. 1981), especially 9 Wright and Miller, Federal Practice and Procedure, § 2254: "A party may not state one ground when objecting to an instruction and attempt to rely on a different ground for the objection on appeal...."
 
 
 110
 The wisdom of the Rule's requirement that there be stated "the grounds of his objection" and the corresponding unwisdom in the majority's excusing the plaintiff here from the responsibility to state adequate grounds are made manifest by the circumstances in which the particular instruction came before the district court.
 
 
 111
 Counsel for the plaintiff had included in his complaint the language[5] which the Advisory Committee on the Federal Rules had adopted as the indicator that the plaintiff wanted not to pursue his case on a theory of diversity jurisdiction but rather on admiralty jurisdiction grounds (with the consequent avoidance of a jury trial).[6] Distinguished counsel for the plaintiff's employer, the joint venture, Raymond-Kiewitt-Tidewater, who was interested in realizing under its lien on any recovery against the owner of the tender up to the amount of its LHWCA payment, obviously recognized the contradictory character of the plaintiff's pleading.[7]
 
 
 112
 Thus, the plaintiff had to fight off the onslaught which was actually of his own making against his right to a jury trial secured by diversity jurisdiction. See Kermerac v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). He ultimately succeeded, but undoubtedly did so only by virtue of emphasizing that "Judge, it's a diversity, not a maritime, theory on which I am proceeding." Having won that engagement, he contributed to the district judge's mind-set which led the judge to the wrong conclusion that, it being a diversity action, the negligence law of Maryland should apply. Yet that judicial error is especially excusable where the judge first observed counsel describe the proceeding in his complaint as "maritime" then cry out "My theory is diversity, not maritime." Suddenly he is confronted with the same counsel saying "My proceeding is maritime, not diversity."
 
 
 113
 Given those vacillations, it was incumbent on counsel for the plaintiff to state the correct grounds of his objection, namely, not simply that the law was derived from maritime sources, but rather what sources of land-based negligence (here the Restatement of Torts, Second, § 286) best outlined the reasons why a negligence per se instruction would be preferable to an evidence of negligence instruction in this particular maritime claim.
 
 
 114
 With respect, I see nothing in Scindia Steam Navigation Co. Ltd. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), which cuts away from the clearly established concept described in detail in the panel majority opinion that, while the law is maritime in character, the maker of maritime law, the Congress, has elected substantively to adopt land-based concepts of negligence divorced from concepts applicable for other purposes under the maritime law. Scindia recognizes that such is the case (n.14: "... the legislative history suggests that the shipowner's liability is to be judged by land-based standards...."; n.13: the Supreme Court quotes with no apparent disapproval the legislative history to the effect that "the purpose was to place the injured longshoreman (or harborworker) in the same position he would be if he were injured in non-maritime employment ashore" and that negligence of the shipowner could be proved only if it was shown "to have acted or have failed to act in a negligent manner such as would render a land-based third party in nonmaritime pursuits liable under similar circumstances"). Scindia merely reaches the obvious conclusion that, while the Restatement is a most estimable source, it is not invariably the correct or applicable one.[8] Sometimes other sources of the correct land-based concepts must be found. Scindia is an example.
 
 
 115
 The en banc majority decision reaches, in my humble judgment, far beyond the proper limits of the principle that serious errors in jury instructions may merit reversal and a new trial. For that extreme relief signals a consequent incremental burden for a system already at full strain. While the rules of "evidence of negligence" and "negligence per se" differ in some conceptual particulars, there is nevertheless a great degree of practical overlap. That is so much the case here that the reversal and grant of a new trial amount to allowing a delinquent plaintiff, who forfeited his right to a new trial through noncompliance with Rule 51, the benefit of a second shot because of the residual paper-thin sliver of light attributable to the fact that the eclipse of "negligence per se" by "evidence of negligence" is only 90% and not total.
 
 
 116
 In my view, with the adoption of the en banc opinion, the Court has sounded the death knell of the five words in F.R.Civ.P. 51: "and the grounds of his objection." It is for that reason that I respectfully dissent.
 
 
 
 [1]
 We speak of error in the instruction as given by the court. However, in part that is only an assumption for the purposes of considering the case. We affirm for failure of the plaintiff to comply with the dictates of Fed.R.Civ.P. 51 ("No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." (Emphasis supplied)). Hence, actual decision as to whether the instruction should have been in terms of "negligence per se," as plaintiff contends, or in the phraseology, "evidence of negligence" employed by the court remains for resolution on another day. We assume, but do not decide, that "negligence per se " was the proper standard
 
 
 [2]
 The obtaining of the certificate of inspection was necessitated by law. See 46 U.S.C. § 390c(a). So too was operation in conformity with the certificate of inspection. 46 C.F.R., Subparts 186.05, 186.10
 
 
 [3]
 Denial that the accident occurred at all was one of the defenses. However, in the present posture of the case there was evidence to support the plaintiff's version of the facts, and, since that was so, we must accept them, if we are, indeed, to ascertain whether the plaintiff had sufficiently preserved his right to object to the jury instruction
 PLAINTIFF, DUTY'S, REQUEST
 FOR INSTRUCTION
 TO JURY, NO. 12
 The Court instructs the Jury that the Defendant, East Coast Tender Service, failed to comply with United States Statutes and Coast Guard Regulations, known as 46 U.S.C. Section 390(a)(b)(c) and 29 CFR Section 186.05-1. Those sections provide that a vessel such as the Chandeleur was required to be in compliance with the Certificate of Inspection issued to it by the U.S. Coast Guard. The Certificate of Inspection for the Chandeleur required that the vessel have at least one licensed Ocean Operator aboard the vessel, when the vessel was being operated less than 12 hours in a twenty four hour period. I instruct you that Mr. Kohlhoff, was not a licensed ocean operator on April 26, 1976.
 This regulation establishes a standard of care in the very area within which we are concerned. Its requirements are binding in law. The violation of the requirements of this regulation constitutes negligence on the part of East Coast Tender Service as owner of the Chandeleur. Accordingly such negligence entitles the Plaintiff to recover from the Defendant if you find that such negligence was a proximate cause of Plaintiff's injury ....
 
 
 [5]
 The jury instructions in pertinent part read:
 If you should find that the Defendant or any one of its employees or agents violated Coast Guard Regulations you are instructed that such violation is evidence of negligence and may be considered by you in determining whether the Defendant was, under all the circumstances, negligent, and whether such negligence was a proximate cause of the Plaintiff's injuries.
 
 
 [6]
 The district judge also relied on Allen v. State, 39 Md.App. 686, 389 A.2d 909 (Ct.Spec.App.1978), cert. denied, 283 Md. 729 (1978)
 
 
 [7]
 The Constitution, Article III, Section 2, of course, extends federal judicial power "to all Cases of admiralty and maritime Jurisdiction." See also Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 627, 628, 79 S.Ct. 406, 408-409, 3 L.Ed.2d 550 (1959), a suit in which "(f)ederal jurisdiction was invoked by reason of the diverse citizenship of the parties, and a jury trial was demanded." There were allegations of unseaworthiness and negligence
 Kermarec was injured aboard a ship upon navigable waters. It was there that the conduct of which he complained occurred. The legal rights and liabilities arising from that conduct were, therefore, within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law.
 Cf. Banks v. Hanover Steamship Corp., 43 F.R.D. 374, 376 (D.Md.1967).
 
 
 [8]
 In Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 204, 98 L.Ed. 143 (1953), also a diversity action in which a jury was prayed, the court held:
 True, Hawn was hurt inside Pennsylvania ... (b)ut he was injured on navigable waters .... Consequently the basis of Hawn's action is a maritime tort ....
 
 
 [9]
 See Bess v. Agromar Line, 518 F.2d 738, 740-41 (4th Cir. 1975):
 The 1972 Amendments to the Act specifically preclude an employee of an independent stevedoring contractor from bringing a suit against the vessel 'based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.'
 
 
 [10]
 In short, maritime concepts traditionally called "negligence," but embodying concepts at variance with land-based or common law negligence were no longer applicable. Thus, in Bess v. Agromar Line, 518 F.2d 738, 740, 742 (4th Cir. 1975) the Court held that, after 1972, there no longer was any LHWCA claim for "the shipowner's negligent breach of its nondelegable duty to provide a safe place to work" (indicating that the cause of action resembles unseaworthiness and "is based upon principles of 'no-fault' liability rather than negligence ..."). To the same effect, see Riddle v. Exxon Transportation Co., 563 F.2d 1103, 1110 (4th Cir. 1977); Chavis v. Finnlines, Ltd., O/Y, 576 F.2d 1072, 1078 (4th Cir. 1978) ("It is well established in this circuit that any determination of negligence on the part of a shipowner under 33 U.S.C. section 905(b) must be based on negligence principles applicable to land-based third parties in nonmaritime pursuits.")
 
 
 [11]
 In Giacona v. Capricorn Shipping Co., 394 F.Supp. 1189, 1194 (S.D.Tex.1975), the court directed its attention to the jurisdictional aspects of 33 U.S.C. § 905(b), not the substantive law rules to be applied under it, and held that, after the 1972 amendments, the nature of an action under the statute remained one "of the general maritime law."
 See the legislative history cited, supra, especially "to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore ...." (Emphasis supplied).
 
 
 [12]
 Sieracki v. Seas Shipping Co., 149 F.2d 98 (3d Cir. 1945), aff'd, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946)
 
 
 [13]
 1. Kernan v. American Dredging Co., 355 U.S. 426, 431, 438, 78 S.Ct. 394, 397, 401, 2 L.Ed.2d 382 (1958), was a suit involving recovery rights, for a seaman's widow and other dependents, governed by the Jones Act (into which the Federal Employers' Liability Act was incorporated). The recovery was not limited to general tort doctrine (i. e. common law, or land-based negligence). The court recognized that the holding expanded the scope of recovery beyond the limits set by common law negligence and rejected "the refined distinctions necessary in common-law tort doctrine."
 
 
 [2]
 Venable v. A/S Det Forenede Dampskibsselskab, 399 F.2d 347 (4th Cir. 1968)
 
 
 [3]
 Provenza v. American Export Lines, Inc., 324 F.2d 660 (4th Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 971 (1964). "However, Provenza and Venable are no longer good law. Both were decided before the 1972 Amendments to the Act. Provenza stands for no more than the fact that the vessel owner is liable only if the breach of the regulations by the stevedore creates an unseaworthy condition. Since the vessel owner, subsequent to the 1972 Amendment to the Act is no longer liable to longshoremen for unseaworthy conditions, neither Provenza nor Venable is of assistance to the appellant." Chavis v. Finnlines, Ltd., O/Y, 576 F.2d 1072, 1083 (4th Cir. 1978)
 
 
 [14]
 In his Brief in this Court, the plaintiff explains:
 In the proceedings below, Duty requested the court to instruct the jury that this case was governed by federal maritime law, and, therefore, that East Coast's violation of an applicable Coast Guard regulation constituted negligence, per se. (Emphasis added.)
 Nowhere did he argue in the trial court that, even if land-based substantive law, rather than maritime law, applied, it should be the federal land-based rule of "negligence per se," rather than the State of Maryland "evidence of negligence" rule.
 
 
 [15]
 Indeed, he only moved to the correct argument for the first time in his Reply Brief. Throughout his main Brief he continued to base his argument on the "maritime" nature of things, and made no contention that, if land-based law applied, it was federal, not state, law, and called for a "negligence per se" instruction
 
 
 [16]
 Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). The plaintiff there filed a diversity action, and prayed a jury. The Supreme Court held:
 If this action had been brought in a state court, reference to admiralty law would have been necessary to determine the rights and liabilities of the parties.... Where the plaintiff exercises the right conferred by diversity of citizenship to choose a federal forum, the result is no different, even though he exercises the further right to a jury trial.
 Id. 628, 79 S.Ct. 408. Cf. Edynak v. Atlantic Shipping Inc. Cie. Chambon Maclovia, S.A., 562 F.2d 215, 221 (3d Cir. 1977), cert. denied, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978):
 That Edynak's complaint invoked only the diversity jurisdiction of the district court is, of course, irrelevant to the applicability of federal maritime law. Pleading only diversity jurisdiction is an appropriate manner of preserving the right to a jury trial.
 See Continental Cas. Co. v. Canadian Universal Ins. Co., 605 F.2d 1340, 1344 (5th Cir. 1979), cert. denied, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980):
 However, while jurisdiction to decide the litigation may be concurrent with state courts or invoked in a federal court on some independent basis, maritime law determines the rights of the parties.
 
 
 [17]
 Appleyard v. Transamerican Press, Inc., 539 F.2d 1026, 1031 (4th Cir. 1976) (Butzner, J., concurring), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977):
 Although the defendant objected to the submission of the issue of punitive damages to the jury, it did not comply with Rule 51 of the Federal Rules of Civil Procedure by objecting to the Court's test for the recovery of such damages.
 
 
 [18]
 The Duty case illustrates the wisdom of the rule. As the matter was put to the district judge, the conclusion reached by him was entirely reasonable. The trial court generally is disadvantaged in not having the time for rumination and reflection vouchsafed to those of us who decide cases on appeal. We have a greater opportunity to piece things together, even when the help of counsel is inadequate. Yet considerations of fairness, and ultimately of better dispensation of justice, dictate that lawyers should not be encouraged to delay raising valid legal points until an appeal has been taken. Judges and opposing counsel should be able to treat a case as it is presented, not as it might better be or have been presented. Consequently, we regularly refuse to consider arguments not presented in the lower court. United States v. One 1971 Mercedes Benz, 542 F.2d 912, 915 (4th Cir. 1976) ("Questions not raised and properly preserved in the trial forum will not be noticed on appeal, in the absence of exceptional circumstances.")
 We have, of course, no way of knowing whether the failure to apprise the trial judge of the proper legal underpinnings for plaintiff's jury request was intentional or merely careless. We assume it was the latter. Yet it does not strain credulity to contemplate, in the circumstances of the case, a knowing failure to inform the judge of why he was wrong in the instruction he gave. In a case put to the jury on a general verdict basis, it probably mattered very little, in terms of the probabilities of which party the jury would ultimately favor, whether the charge was in "negligence per se " language, or in "evidence of negligence" terms. Whether proximate cause had been established would, on the particular facts of the case, predominate.
 We should certainly be loath to put the plaintiff in the happy position of being able knowingly to let the case go to the jury once on the erroneous instruction, with a right guaranteed to a second chance if he didn't like the outcome the first time around. Yet it is altogether dubious whether silence through ignorance on trial counsel's part should be rewarded in that fashion, when purposeful silence would not.
 
 
 [1]
 At the outset of the Kernan opinion, the Court specifically disclaims reliance on principles of unseaworthiness. 355 U.S. at 428-29, 78 S.Ct. at 395-97. As the majority opinion states, "To the limited extent that pre-1972 cases were discussing true negligence, unalloyed with special maritime concepts, of course, they remain persuasive despite the fact that the claims involved were maritime in character."
 
 
 [2]
 Now, when we get to No. 12, this requires a ruling as to the sort of claims presented here. First of all, it is quite clear that the claim is a diversity claim. Indeed, the Plaintiff would not have a jury otherwise. So, in instructing the jury so far as a violation of Coast Guard regulations is concerned, the question is, is it negligence per se or is it evidence of negligence
 Now, the ruling of the Court is that, under Maryland law, which we are applying in diversity, it is only evidence of negligence ....
 
 
 [3]
 Now, the next question comes up as to whether the jury should be instructed that there is an admiralty claim, that under the admiralty claim the rule would be different, that violation of the regulation would be negligence per se. The Plaintiff has relied on the Provenza case in that regard
 After considering the pleadings here, I am satisfied that there is no admiralty claim, particularly when we get down to the question of instructing the jury on the same point in two different ways, one under diversity law and one under admiralty law....
 ... So I will not instruct the jury that there is a separate claim and that under the separate claim the evidence is to be considered in a different way, particularly the Coast Guard regulations, than it would be under the Maryland law, the diversity claim. So I am going to instruct the jury solely under the Maryland law of negligence, which, of course, would apply to an accident such as this one.
 
 
 [4]
 That he had a right to do so is beyond question. As stated in Gilmore and Black, The Law of Admiralty (Second Ed. 1975) § 1-13:
 The Judiciary Act of 1789, it will be recalled, while bestowing "exclusive" admiralty jurisdiction on the District Courts, saved "to suitors, in all cases, the right of a common law remedy where the common law is competent to give it." ...
 Summarily, the result of the cases is that a suitor who holds an in personam claim, which might be enforced by suit in personam in admiralty, may also bring suit, at his election, in the "common law" court that is, by ordinary civil action in state court, or in federal court without reference to "admiralty", given diversity of citizenship and the requisite jurisdictional amount. (footnotes omitted).
 
 
 [5]
 F.R.Civ.P. 9(h) permits a pleading or a count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also cognizable on another jurisdictional basis to contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c) (third-party practice), 38(e) (right to jury trial), and 82 (venue). Form 2 of the Appendix of Forms, supplementing Rule 84, states that a pleader desiring to invoke the distinctly maritime procedures referred to in Rule 9(h) should allege: "This is an admiralty or maritime claim within the meaning of Rule 9(h)." Evidently it was to the absence of this allegation to which the district court was referring
 
 
 [6]
 While the majority concludes that plaintiff's counsel relied on a faulty theory of law to support his entitlement to the requested instruction, it is evident that I think differently
 
 
 [7]
 I think it clear that my differences with the majority in this regard are based largely on semantics. I find that the 1972 amendments to LHWCA call for the application of a uniform federal maritime law which looks to general land-based common-law negligence principles for much of its substance. The majority finds that LHWCA calls for application of a uniform federal land-based law of negligence, abandoning any reference to the "maritime" nomenclature. Only counsel's failure to phrase his objection in terms reflecting the majority's view on this semantic difference of opinion, I fear, prevents the majority from addressing the substance of plaintiff's claim
 
 
 *
 Following the panel decision and before argument, Chief Judge Haynsworth elected to take senior status. He therefore became ineligible to be a member of the in banc court. See 28 U.S.C. § 46(c)
 
 
 **
 In his dissenting opinion, Judge Hall suggests that the weight of authority supports a "licensing exception" to the general rule that violation of a statute is negligence per se. The majority respectfully disagrees. The cases relied upon by the dissent create no such exception. Instead they hold largely that, despite the violation of a licensing statute by defendants, plaintiffs may not recover where they have proved no causal connection between the failure to possess a license and the injury suffered. See, e. g., Byrne v. Matczak, 254 F.2d 525 (3 Cir.), cert. denied 358 U.S. 816, 79 S.Ct. 24, 3 L.Ed.2d 58 (1958); Shaw v. Hart, 136 Ind.App. 567, 202 N.E.2d 587 (1964); Mount Nebo Baptist Church v. Cleveland Crafts Co., 154 Ohio St. 185, 93 N.E.2d 668 (1950); Carpenter v. Lyons, 78 Ga.App. 214, 50 S.E.2d 850 (1948); Kurtz v. Morse Oil Co., 114 Conn. 336, 158 A. 906 (1932)
 The majority's holding in this case is perfectly consistent with that principle. A negligence per se instruction does not create strict liability; it would not remove the issue of proximate cause from the jury. Properly instructed, the jury still would be required to determine whether defendant's negligence in the use of an unlicensed operator caused or contributed to plaintiff's injury.
 Moreover we think it entirely proper to adopt as the appropriate rule of federal maritime law that a violation of this particular licensing requirement is negligence per se despite automobile cases to the contrary. This requirement pertains to the operation of a vessel which is intended to carry more than six passengers, as well as other members of the crew. 46 C.F.R. §§ 176.01-1 and 186.05-1. The regulation is designed to insure that there shall be on such vessels a person whose competence to operate it or to direct its operations has been assured. This is simply a different kind of licensing requirement than those pertaining to the operation of private motor vehicles.
 
 
 [1]
 The following are among those jurisdictions which follow the rule of negligence per se but recognize an exception from that rule for licensing statutes: Alabama, Arizona, Colorado, Connecticut, District of Columbia, Georgia, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Mississippi, Missouri, New York, Ohio, Oklahoma, Oregon, Pennsylvania, and Texas. Lindsey v. Barton, 260 Ala. 419, 70 So.2d 633 (1954); Lutfy v. Lockhart, 37 Ariz. 488, 295 P. 975 (1931); Hertz Drive-Ur-Self System v. Hendrickson, 109 Colo. 1, 121 P.2d 483 (1942); Kurtz v. Morse Oil Co., 114 Conn. 336, 158 A. 906 (1932); Waugh v. Suburban Club Ginger Ale Co., 83 U.S.App.D.C. 226, 167 F.2d 758 (1948); Carpenter v. Lyons, 78 Ga.App. 214, 50 S.E.2d 850 (1948); Shaw v. Hart, 136 Ind.App. 567, 202 N.E.2d 587 (1964); Schuster v. Gillispie, 217 Iowa 386, 251 N.W. 735 (1933); Wilson v. Rogers, 140 Kan. 647, 38 P.2d 124 (1934); Baber v. Merman, 249 S.W.2d 142 (Ky.1952); Janssen v. Mulder, 232 Mich. 183, 205 N.W. 159 (1925); Mahowald v. Beckrich, 212 Minn. 78, 2 N.W.2d 569 (1942); Myrick v. Holifield, 240 Miss. 106, 126 So.2d 508 (1961); Siess v. Layton, 417 S.W.2d 6 (Mo.1967); Phass v. MacClenathen, 274 App.Div. 535, 85 N.Y.S.2d 643 (1948); Mt. Nebo Baptist Church v. Cleveland Crafts Co., 154 Ohio St. 185, 93 N.E.2d 668 (1950); Bennett v. Morris Farrar Truck Co., 520 P.2d 705 (Okl.1974); Halsan v. Johnson, 155 Or. 583, 65 P.2d 661 (1937); Byrne v. Matczak, 254 F.2d 525 (3d Cir.), cert. denied 358 U.S. 816, 79 S.Ct. 24, 3 L.Ed.2d 58 (1958); St. Louis, B. & M. Ry. v. Price, 244 S.W. 642 (Tex.Civ.App.1922)
 California, Illinois, Maryland, Nevada, New Jersey, Vermont and West Virginia apply the evidence of negligence rule to all statutory violations except in cases of licensing. In these jurisdictions lack of a license is considered immaterial and not even considered evidence of negligence. Strandt v. Cannon, 29 Cal.App.2d 509, 85 P.2d 160 (1938); Perry v. Richerson, 3 Ill.App.2d 338, 122 N.E.2d 75 (1954); Davis v. Gordon, 183 Md. 129, 36 A.2d 699 (1944); Mitrovich v. Pavlovich, 61 Nev. 62, 114 P.2d 1084 (1941); Ross v. Pennsylvania R. Co., 106 N.J.L. 536, 148 A. 741 (1930); Dervin v. Frenier, 91 Vt. 398, 100 A. 760 (1917); Hersman v. Roane County, 86 W.Va. 96, 102 S.E. 810 (1920).
 Even in Delaware, North Carolina, South Carolina, Virginia, and Washington, where lack of a license is considered negligence per se, the courts have found that there was no causal connection between the license and the accident and therefore no recovery as a matter of law. Brown v. Green & Flinn, 29 Del. 449, 100 A. 475 (1917); Ham v. Greensboro Ice & Fuel Co., 204 N.C. 614, 169 S.E. 180 (1933); Cirsosky v. Smathers, 128 S.C. 358, 122 S.E. 864 (1924); Laughlin v. Rose, 200 Va. 127, 104 S.E.2d 782 (1958); White v. Kline, 119 Wash. 45, 204 P. 796 (1922). Only in New Hampshire and Massachusetts does failure to have a license constitute prima facie evidence of negligence, and in Massachusetts it only applies to registration of the car, not licensing of the driver. Vassillon v. Sullivan, 94 N.H. 97, 47 A.2d 115 (1946); see Prosser, Torts (4th ed.), p. 183.
 
 
 [2]
 Among the jurisdictions which have overturned trial court judgment on the grounds that the nonexistence of a license should not have been admitted into evidence are: California, Connecticut, Georgia, Minnesota, Nevada, New York, and Pennsylvania. See note 1, supra, and cases cited therein
 
 
 [3]
 The Coast Guard regulation in this case did not require that the helmsman be licensed. It only required that "... the vessel have at least one licensed Ocean Operator aboard...." 46 C.F.R. 186.05-1 (1980)
 
 
 [4]
 Indeed, the district court went beyond even the requirement of the forum state from which the evidence of negligence instruction was taken. Maryland law holds that lack of a license is immaterial and cannot even be considered evidence of negligence. Davis v. Gordon, 183 Md. 129, 36 A.2d 699 (1944)
 
 
 [1]
 Counsel's words were:
 Your Honor, we have one exception and that would be with respect to the failure to grant what has been marked as Plaintiff's request for Instruction No. 12. The basis for the exception is that it is the Plaintiff's position that, although in the complaint no specific reference was made to Rule (9)(h), that the Plaintiff has provided in the first cause of action a diversity claim based upon the savings to suiters clause and that it is a maritime claim, which would make the maritime law applicable. The incident occurred on navigable waters and it's our position that the maritime law would apply.
 Accordingly, the Provenza and Venable cases which have been cited, along with the Kernan case, would require an instruction that a violation of the Coast Guard regulation would be negligence per se as opposed to being evidence of negligence and that if the jury were to find that as a proximate result of that violation, the Plaintiff was injured, then it is negligence in and of itself. That would be
 
 
 [2]
 It would have been no more satisfactory had the plaintiff's counsel merely said "land-based." Neither descriptive tag afforded an answer as to which was the proper instruction. Under "land-based," or under "maritime," law, whether activities of a defendant would constitute "negligence per se" or "evidence of negligence" would depend on the particular circumstances and on aspects of the law of negligence as to which plaintiff's counsel cast no light whatsoever. He did not so much as allude to their existence
 
 
 [3]
 To like effect is Bachtel v. Mammoth Bulk Carriers, Ltd., 605 F.2d 438, 445-46 (9th Cir. 1979) ("The designing of a 20-30 foot deck load of logs without adequate safeguards at the sides could well have been viewed as evidence of negligence under the law as it existed prior to 1972.... Here, the trial judge did not instruct that Mammoth was negligent as a matter of law in failing to comply with the regulation. He submitted the regulation to the jury, along with all other evidence, so that the members might determine whether Mammoth was guilty of negligence. This would be the proper course to follow under all of the pre-1972 cases on the subject."). (Emphasis in original.)
 
 
 [4]
 Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located
 
 
 [5]
 "This cause of action arises under the General Maritime Law of the United States as hereinafter more fully appears."
 
 
 [6]
 Harrison v. Flota Mercante Grancolombiana, S. A., 577 F.2d 968, 986-87 (5th Cir. 1978):
 For example, a longshoreman's claim for personal injuries ... may be asserted in a suit in admiralty or, if diversity of citizenship exists, in a civil action. One of the important procedural consequences is that in the civil action either party may demand a jury trial, while in the suit in admiralty there is no right to jury trial except as provided by statute.... The unified rules must therefore provide some device for preserving the present power of the pleader to determine whether these historically maritime procedures shall be applicable to his claim or not ; the pleader must be afforded some means of designating his claim as the counterpart of the present suit in admiralty, where its character as such is not clear.... Other methods of solving the problem were carefully explored, but the Advisory Committee concluded that the preferable solution is to allow the pleader who now has power to determine procedural consequences by filing a suit in admiralty to exercise that power under unification, for the limited instances in which procedural differences will remain, by a simple statement in his pleading to the effect that the claim is an admiralty or maritime claim. (emphasis added (by Court)).
 
 
 [7]
 It is ironic that counsel for the employer should now, in the interest of furthering his client's position, seek to muster arguments to support the adequacy of the presentation by plaintiff's counsel, in light of what his firm argued below. Counsel for the employer qualifies in wisdom, if not in age, as a Nestor of the Baltimore admiralty bar
 His firm, having, in its Intervening Complaint, asserted that the claim was an admiralty or maritime claim, contended that the owner of the tender, having admitted the allegation, had pleaded itself out of any right to a trial by jury, F.R.Civ.P. 9(h) and 38(e) specifically so providing.
 
 
 [8]
 Specifically, a land-based rule which also incorporates concepts of contributory negligence or of assumption of risk would not be satisfactory since those concepts have no part to play in third party actions under LHWCA, 33 U.S.C. § 905(b). Present in the Restatement rules considered in Scindia, and, therefore, making them inappropriate in that particular case, those concepts of contributory negligence and assumption of the risk were totally uninvolved insofar as "negligence per se" and "evidence of negligence" were concerned. Thus reference to that respected source of land-based negligence, the Restatement, in the instant case would in no wise be precluded by anything said in Scindia